JOHN C. GILMAN, Appellant,

*vs.*

THOMAS WILLIAMS and CHARLES BETTRY,
Respondents.

ERROR TO JEFFERSON CIRCUIT COURT.

When property exempt from execution by the laws of this State, is levied upon by the Marshal of the U. S. by virtue of an execution from the district court of the U. S., and the same are replevied in a State court, he (the marshal) can neither deny the jurisdiction of the court, nor defend the action on the ground that the property is "in the custody of the law."

Property unlawfully taken and detained by a sheriff or marshal cannot be said to be in the custody of the law.

That property is in the custody of the law which is taken and held by legal process in a lawful manner and for a lawful purpose.

A marshal of the U. S. cannot justify the taking and detaining of the property of A. on an execution against B. on the ground that his custody is the custody of the law.

A State court has jurisdiction to try the title to property in possession of the marshal of the U. S. by virtue of process against a judgment or attachment debtor, which is claimed by a third person, a stranger to the writ.

A span of horses owned by two persons in partnership, as partnership property are exempt from execution against both partners, in like manner as if owned by one of them separately.

It is not necessary for the judgment debtor to select or point out to the officer such articles of property as are specifically exempt by law from execution.

This was an action brought by the respondents against the appellant for the recovery of two horses, of the value of five hundred dollars.

The defendant justified the taking of the said property by virtue of an execution issued out of the district court of the United States to him as deputy marshal of the district of Wisconsin, against the goods and chattels, &c., of the said respond-

ants, upon a judgment rendered in said court against them, and claimed that by reason of the said levy the said chattels from thenceforth remained in the custody of the law: to wit, in the hands of the appellant as an officer of said court having jurisdiction of the subject matters therein; and submitted whether the said circuit court would retain further jurisdiction of the suit for the reasons before stated.

On the trial it was proved that the appellant took the horses as alleged; that they were the property of the respondents, and were worth $250 each; that the respondents were partners and owned the horses as such.

The appellant then moved for a nonsuit, which being overruled, produced in evidence the record of the judgment and execution as set out in his answer, and proved that the horses were levied upon by virtue of said execution.

The counsel for the defendant then moved the court to dismiss and abate the proceedings in this action, for the reason that the property, for the recovery of which this action was brought was at the time of the commencement of this action in the custody of the law, viz: in the hands of the U. S. Marshal by virtue of the execution in evidence in this case, and issued by the U. S. District Court upon a valid judgment rendered in said court against the plaintiffs in this action. This motion was denied, and the counsel for the defendant excepted to the said decision.

The evidence being closed, the counsel for the defendant asked the judge to charge the jury as follows:

1. That the statute exempting a span of horses to the judgment debtor, does not go so far as to exempt a team which is partnership property, from seizure and sale on execution against the firm; but the judge declined to so charge the jury, to which the defendant excepted.

2. That in order to entitle a debtor to the benefit of the exemption law, it is necessary that he or his authorized agent,

if either be present at the time and place of levy, should select his exempt property and claim it as such; but the judge declined to so charge the jury on the ground that no selection was necessary except in cases where the debtor had more property than was exempt; to which the defendant excepted.

3. That if the jury find that the plaintiffs were merchants in trade, it is further necessary for the plaintiffs to show that they had no other stock in trade to the amount of two hundred dollars: but the judge declined to so charge the jury, for the reason that the question could not arise in this case; to which the defendant excepted.

4. That the exemption law was made for the protection of persons who needed such exempt property, to pursue their ordinary occupation for the support of the debtor and his family, and that where a debtor has absconded from the State with intent to defraud his creditors, and leaves a span of horses behind, such horses are not exempt from sale on execution; but the judge declined to so charge the jury, to which the defendant excepted.

5. That dry-goods merchants are not entitled to horses as exempt—they are no part of their stock in trade, and are not used and kept for the purpose of carrying on their trade or business; but the judge declined so to charge the jury, to which the said defendant excepted.

6. That two persons cannot join in an action for the recovery of property as exempt from execution; each must bring his action separately; but the judge declined to so charge the jury; to which the said defendant excepted.

The jury returned a verdict for the plaintiffs, finding the value of the property to be five hundred dollars, and assessed the plaintiffs' damages at six cents.

Thereupon the defendant filed a motion for a new trial for the following reasons, viz:

1. The verdict of the jury was contrary to the evidence in

the case. There was no proof to show that the plaintiffs individually did not each of them, or one of them, own a span of horses besides those levied upon by defendant. There was no proof that the plaintiffs, as partners, did not own other horses than those levied upon by the defendant.

2. The court erred in not instructing the jury as requested in writing by defendant's attorneys.

This motion was overruled, and judgment entered upon the verdict, from which the defendant appealed.

*Butler, Buttrick and Cottrell*, for the appellant, contended that as the horses were partnership property owned by the plaintiffs as merchants, and not necessarily used in their business, they were not exempt from execution.

That the court erred in refusing the second instruction asked for by the appellant. *Seaman vs. Luce*, 23 Barb., S. C. R. 240. And also erred in refusing each and all of the instructions asked by the defendant's counsel.

That the property was in the custody of the law, and not liable to the process issued in this case, or to the jurisdiction of the court in this action.

*Collins, Atwood & Haskell*, for the Respondents.

The exemption law should be liberally construed. *Gibson vs. Jenney*, 15 Mass. 205, 196 ; *Richardson vs. Bushnell*, 10 Met. 506.

The statute exempts one span of horses. If the debtor has more than one span, he may select ; otherwise, selection is unnecessary. *State vs. Haggard*, 1 Humph. 330, R. S. Ch. 102, § 58.

Although the horses were owned jointly by the respondents, the interest of each in the span was exempt. The greater includes the less.

Gilman vs. Williams et al.

*By the Court,* SMITH, J. This is an appeal from a judgment of the circuit court of Jefferson county. The action was in replevin, or in the nature of replevin brought by the respondents against the appellant for the recovery of two horses, or a span of horses, alleged to have been taken on execution issued out of the district court of the United States upon a judgment rendered therein against the respondents, by the appellant, as deputy marshal, the respondents claiming the same as exempt from levy and sale under the exemption law of the State.

The first question presented by the pleadings in this case, is one which has, to a small extent, become the subject of judicial examination. It is well that it may now be settled for the future guide of executive officers, as well of the State courts, as of the district court of the United States; for it is very desirable that the executive officer of both courts have a rule of action in the premises upon which they may rely as authoritative.

It is claimed in the answer of the appellant that the horses taken and held by him, were seized by virtue of an execution issued out of the district court of the United States, and hence were in the custody of the law. But how could they be in the custody of the law, unless the deputy marshal had a lawful right to take them into his custody? The idea that an unlawful custody of property can be the custody of the law is simply absurd, not to say preposterous. How it can be imagined that a deputy marshal or any other executive officer of the district court of the United States can illegally seize the property of a citizen, property outside of, and beyond the purview of his writ, and yet claim to hold it in the custody of the law by virtue of such illegal seizure, is beyond comprehension. It may be asked, who shall decide whether his custody is lawful or not? The answer is suggested by the statement

of the proposition, viz : any judicial tribunal competent to try the right or title to property, the claim to which may be disputed.   If a constable having an execution issued by a justice of the peace upon a judgment in favor of A against B should seize the property of C to satisfy the same, would any one claim that he had C's property in " the custody of the law ?" The custody of the constable of property taken by virtue of legal process within the purview of his authority, is as much the custody of the law as that of a marshal of the U. S., or sheriff of the county.   It is just such custody of the property seized, as is warranted by his writ.   There is no such thing as an illegal custody of the law.

It would be easy to define, were it necessary, what is meant in the books and in legal parlance as " the custody of the law."   But until recently, I have never heard it claimed, that a deputy marshal or sheriff, armed with an execution against one particular person, could make a foray into a neighborhood or communical town and indiscriminately seize upon the property of the inhabitants, and justify his seizure and retention of the same by virtue of the cant phrase that they were " in the custody of the law," that he had the right to seize them, because they were going into " the custody of the law," that *his* custody is " the custody of the law."   When property is lawfully taken, by virtue of legal process, it is in the custody of the law, and not otherwise.   But it is monstrous to assume that the executive officer of any court can unlawfully seize property with or without process, no matter which, and then a claim can be set up that the custody which he may acquire, whether legal or not, is the custody of law, and hence sacred in his keeping, and to which he may arbitrarily apply the maxim, "*noli me tangere.*"   That day has gone by.   The writ in possession of the officer, by which he assumes to act, necessarily prescribes and defines his authority in the premises, from whatsoever court the same may have

been issued. Hence the custody of the law must necessarily be that, and that only which the officer had a right to assume over the specific property by virtue of the prescribed mandate contained in his writ. It cannot be permitted, nor is it in conformity with any recognized principle of law or administrative jurisprudence, that a marshal or deputy marshal of the United States, armed with an execution or attachment against the goods and chattels of an individual citizen named therein, may ransack the whole State, seize upon the property of any other citizen, not named in his writ, dictated by malice, whim or caprice, or urged on by the [grasping or unscrupulous avarice of the judgment or attaching creditor, and having succeeded in acquiring his possession, claim that that possession of the property so acquired "is the custody of the law." It is obvious that such possession can be no legal custody, but that the same is tortious, and that the person aggrieved thereby is entitled to the same remedy in the law as for any other tortious act, and is at liberty to choose his forum the same as in other actions of tort; and we know of no principle of law, or of jurisprudence, or of judicial comity, which could require the party aggrieved by such tortious act to repair for his remedy to the court from which the process issued, and whose process had been transcended and abused.

It is deemed unnecessary to make any further remarks upon this branch of the case. We proceed now to examine the more difficult questions involved. From what we have already observed, it is apparent that the respondents had the right to bring their suit in the circuit court of Jefferson county; in other words, that there was no such custody of the law of the property in question as required them to litigate their claim thereto in the district court of the United States, but that they were at liberty to do so in any court having jurisdiction of the parties and the subject matter.

This last branch of the case has reference to and depends

upon the proper construction to be given to our statutes of exemption.

After the evidence on both sides had been closed, the counsel for the defendant below asked the judge to charge the jury among other things, as follows:

"That the statute exempting a span of horses to the judgment debtors, does not go so far as to exempt a team which is partnership property from seizure and sale on execution against the firm;" and the said judge declined to so charge the jury, to which the said defendant, by his counsel, excepted.

I am free to admit, that on the examination at first, I was by some means misled as to the precise facts of this case, and have anxiously reviewed the facts, as set out in the record, together with the instructions of the court below, given thereon or demanded and refused. But, on the whole, I do not see that the legal state of the case is changed.

The first instruction asked, and above quoted, seems to be the principal cause of error alleged by the appellant.

The instruction asked for seems to be based upon the hypothesis that a team of horses which belongs to two men in partnership is not exempt from execution against the firm. Is this sound doctrine? Section 6 of chapter 102 of the revised statutes of Wisconsin, 1849, exempts to the judgment debtor a span of horses from seizure and sale on execution. If one of these partners had owned both the horses, would they not have been clearly exempt? Can the fact therefore, that each one of the partners, or joint debtors in the execution, owned a moiety in each of the horses render such moiety liable to execution? If the whole would be exempt in either, can the moieties be liable in both? Does not the greater include the less in this as in other cases?

We do not think it necessary that the judgment debtors should designate, point out, select or choose such articles of

Gilman vs. Williams et al.

personal property as are by statute specifically exempted. The officer is presumed to know the statute, and must obey it or not, at his peril.

There are other questions raised in the argument of this case, to discuss which at length would be interesting and instructive. But we think we have gone far enough to dispose of the merits of this appeal.

We perceive no substantial error in the record. The exemption laws are remedial and beneficent acts of legislation, and we are disposed to give them a liberal interpretation and to administer them in the benign spirit in which they were enacted. (See *Maxwell vs. Reed*, decided this last term.)

The judgment of the court below must therefore be affirmed with costs.