## HERRICK VS. GRAVES.

In an action for the recovery of real estate, it is not necessary to allege in the complaint that the defendant is in possession of the premises in question, at the time of the commencement of the action.

Where the variance between the proofs offered at the trial and the complaint is of such a character that the defendant could not have been misled by it, the court may properly disregard it.

Where judgment was rendered in the circuit court, on an appeal from justices court against the appellant and his surety in such appeal, and execution is not issued thereon within thirty days thereafter, the surety is discharged, and any execution issued thereon after that time, commanding the sheriff to satisfy the judgment out of the property of the appellant only, is regular and valid.

A notice of sale of real estate on execution, first published on the 9th day of June and for six successive weeks to the 21st of July thereafter, is sufficient.

Where real estate is sold by virtue of two executions, the title of the purchaser will be sustained, though it should turn out that one of the executions was void for want of a valid judgment to support it.

A variance between the amount stated in the return of the sheriff and the certificate of the sale of real estate on execution or the deed issued thereon as to the sum for which the premises were sold, or the number of the executions by virtue of which such sale was made, does not vitiate the deed, if it appears that the sale was made pursuant to a valid execution and in order to satisfy the same.

A debtor who removes from his homestead, without any intention of acquiring another elsewhere, for temporary purposes merely, or from some necessity, and with the intention of returning again to occupy the same, as and for his homestead, as soon as circumstances will allow, does not forfeit or lose the exemption of the same from forced sale on execution, though he should while so absent therefrom rent it to a tenant.

Where a levy was made on a tract of land containing one hundred acres, and the debtor claimed forty acres off of the west side of the *south* half of the tract as exempt, and it turned out that his dwelling house was mostly if not entirely situate on the *north* half of said tract. *Held,* that whether the dwelling house was in fact situated on the premises thus claimed was not material, and that it would be presumed that he intended by his selection to embrace the dwelling house and its appurtenances, instead of claiming by any particular government subdivision.

Where the debtor states with reasonable certainty what he claims as his homestead it is a sufficient claim thereof, and if the creditor is dissatisfied with the selection made, the officer should cause a survey to be made, setting off the exempt portion in a compact form, on the part including the dwelling house and its appurtenances.

APPEAL from the Circuit Court for *Fond du Lac* County. This was an action for the recovery of the south half of a

lot of land containing one hundred acres situated in Dodge county; the complaint alleges that the plaintiff has an estate in said lands, particularly stating its nature and extent and that he is entitled to the possession thereof and that the defendant unlawfully withholds possession thereof from him to his damage, &c. The action came on to be tried before the court and a jury, when the defendant objected to any evidence being given under the plaintiff's complaint, on the ground that it did not state facts sufficient to constitute a cause of action, and particularly because there was no allegation therein that the defendant was in possession of the premises in question, when the action was commenced, which objections were overruled by the court and the defendant excepted.

The plaintiff offered in evidence the judgment roll and docket entry of a judgment in a former action between the same parties, in the circuit court for Dodge county, from which it appeared that on the 11th day of December, 1856, after a trial by a jury in which both parties were represented by counsel, and produced and examined witnesses, judgment was rendered on the verdict of the jury against the defendant *Graves* and one *A. P. R. Smith* his surety in favor of the plaintiff *Herrick* for $92.39 damages, and $35.03 costs, and docketed April 23d, 1857. It also appeared from the judgment roll, that the action was commenced in justices court and the record did not show that any notice of appeal was given, nor that any motion was made for judgment against said surety. The defendant objected to said judgment roll being read in evidence for the reason that the court rendering it had no jurisdiction, which objection was based on the fact that the record did not show such motion of appeal and motion for judgment against his surety. The court overruled such objection, and the said judgment roll and docket entry were read in evidence, and to this ruling the defendant excepted. The plaintiff then offered in evidence an execution issued on said judgment, on the 20th day of May, 1857, against the defendant *Graves* only, and the

return thereon, to which the defendant objected to on the ground that it was issued against only one of the judgment debtors, and for that material interlineations and erasures appeared therein, (but in what respects, does not appear from the record) and for that the sheriff's return shows that the premises in question were levied upon by virtue of three executions, and sold upon two of them; whereas the complaint alleges that it was levied upon and sold by virtue of only one execution, and also that the notice of sale, forming a part of said return, with the proof of publication thereof are insufficient and that the notice of sale was not published for the time required by law, which objections were overruled, and said execution and return read in evidence, and the defendant excepted. The execution in favor of *Herrick* against *Graves* on said judgment was in the usual form, reciting the judgment against *Graves* and A. P. R. Smith as his surety, and commands the sheriff to satisfy the same out of the property of *Graves* only. Two other executions in the usual form were produced, issued on two several judgments recovered by one James C. Stone against said *Graves* in the circuit court for *Dodge* county. The return of the sheriff (after the title of the cases in which said three executions were issued) states in substance that the sheriff by virtue of said several executions thereto annexed, on the first day of June, A. D., 1857, levied upon the following described real estate, (describing 100 acres of land of which the premises in controversy are the south half) for want of goods and chattels, that on that day be caused notice thereof, to be published and posted, &c., that on the day of sale he offered for sale the south half of the premises and sold them to *Herrick* for $203.30, being the amount of two of said executions and costs, and that the north half was then offered and sold to said James C. Stone for $171.48, the amount of the other execution and costs. The notice of sale was in the usual form reciting a levy on the premises before mentioned by virtue of three executions issued out of the circuit court for

*Dodge* county. The affidavit of publication of the notice of sale states that the notice was published six successive weeks commencing on the 9th day of June 1857. The sale took place on the 21st of July, 1857, that being the day stated in the notice.

The plaintiff then offered in evidence the sheriff's certificate of sale of the premises in controversy, to which the defendant objected on the ground that it recited a judgment against *Graves* and Smith, and that the plaintiff had shown that the execution was issued against *Graves* only, and also for that the certificate showed that the premises were sold for a less amount than is stated in the sheriff's return to the execution, and for that the sale was made on one execution only, which objections were overruled by the court and the certificate received in evidence, and the defendant excepted to the ruling.

The plaintiff then offered in evidence a deed from Orlando S. Phelps, late sheriff of Dodge county, for the premises in question, dated Oct. 31, 1859, to which the defendant objected for that it was not described in the complaint, that it recites an execution against *Graves* and Smith, when the execution in evidence is against *Graves* alone and that it recites a sale for a different amount than is stated in the certificate of sale in evidence, which objections were overruled and the deed admitted in evidence, and the defendant excepted to the ruling. The plaintiff then offered in evidence a deed of the same premises under the same sale from D. L. Townsend, late sheriff of Dodge county, which was objected to for the same reasons as the other sheriff's deed, and for the reason that it was not acknowledged or recorded, which objections were overruled and the deed read in evidence, and the defendant excepted. James Devlin testified on the part of the plaintiff, that the defendant had 100 acres in the south-west quarter of section 35. In December he was in possession of the said 100 acres and has continued in possession since then, and has worked the south fifty acres thereof for the past two or three years. The de-

fendant has been there ten or eleven years, living on it with his family. After he had lived there for two or three years he moved to Horicon, and came back to the place in the summer of 1856, and moved away in the winter of 1857 to Horicon, and then came back to the farm the last of July or August, 1857. When he came back in the summer of 1857, he moved into my father's house and lived there about three months and then moved to his own house on the 100 acres. He kept his team at the barn on his own land, and the reason why he did not go into his own house was, because there was a tenant in it who had worked the place while he was at Horicon. After the plaintiff had rested, the defendant was sworn in his own behalf and testified that on the first of May, 1856, he moved on the land in controversy, and continued to reside there until March or the last of February, 1857, when himself and wife boarded at the tavern until July, 1857, when they went back to the farm and lived in Devlin's house. The land was worked this season by Mr. Moss. The first I knew of the levy on the land was two or three days before the sale when I was informed by the sheriff. I asked him why he did not call on me with his execution, that I had plenty of personal property to satisfy it. I offered to turn out personal property to him; he said he would not release his levy, because he was directed by the parties to sell the land. I told him, if he would not release the levy, then I claimed my homestead out of the south part and west side, forty acres off the west side of the south half. The defendant testified that he then owned personal property to the amount of $700 or more, that he did not keep house during his absence from the farm in the spring and summer of 1857, and that during this time he left some of his household furniture in his house on the farm. On cross-examinotion he testified that at the time he moved to Horicon in the spring of 1857, his tavern which he owned there was rented, and so continued until he moved back on the farm, and that in February, 1857, he leased the farm to Moss for one

year. Other evidence was then given to show that the defendant had at the time of the levy sufficient personal property to satisfy said judgments, and that he had offered to turn it out for that purpose, and to show that he claimed a homestead out of the premises levied on, before the day of sale ; and a written notice was given in evidence that had been served on the sheriff after the sale but before the execution of the sheriff's deed, to the effect that the defendant claimed the west forty acres of the south half of the 100 acres as his homestead, being 40 acres off the west side of the tract claimed in this action.

The defendant then proved that the said judgments in favor of said James C. Stone, to satisfy which, in connection with the judgment in the case of *Herrick vs Graves* said premises were sold; were, after the sale in question, and on the 22d day of July, 1859, reversed and set aside on writs of common law certiorari, issued out of the circuit court for Dodge county, for the reason that the court rendering the same had no jurisdiction in either of the actions in which the same were rendered. Said judgments were rendered in justices court, and transcripts thereof had been filed before the said sale and before said reversal thereof, in the circuit court for Dodge county. After the defendant had rested his case, the plaintiff gave evidence to show that the defendant's house stood about two rods north of the north line of the premises in controversy, and on the north half of the 100 acres. O. S. Phelps, the sheriff, who made the sale in question, testified that he did not think it was possible the defendant offered to turn out personal property to satisfy the executions; that there might have been something said about a homestead, but that he was certain he did not designate any portion of the land as a homestead, and that the notice of the claim of a homestead therein was served on him after he went out of office, and shortly before the sheriff's deed was given. The plaintiff then gave evidence tending to show that the defendant did not claim any homestead out of the premises, until after the sheriff's sale. The defend-

ant called Wm. Moore, county surveyor, who testified that he had made a survey of the premises in question, and that the south-east corner of the defendant's house projected from ten to twelve inches south of the north line of the premises in controversy, and that the rest of the house was on the north half of the 100 acres.

The court charged the jury among other things, that "the homestead is the land on which the dwelling-house stands, and no other. The law means, that a man having a house, shall have his home where he lives; it can't be said a man can have a homestead where he don't live."

"It is said the defendant claimed to the sheriff, when he was notified of the levy, that he was entitled to a homestead out of the lands levied on by the sheriff, and it was the duty of the sheriff to make a survey. I charge you, if the claim that is made, turns out to be of land on which the dwelling house is not wholly or the greater part situated, and the sheriff sells without a survey, it is good."

"The defendant is in time to make the claim as soon as he knows of the levy, and if he never had notice till after the sale, he is in time, then. If you are satisfied that the defendant claimed a homestead to the sheriff, but did not specify his claim by a particular description, then his claim is bad."

"If a party cannot have a homestead without a house on it; the house must stand wholly upon it, and even if 10 inches of the house stood on the land claimed, that will not do;" to which charge, and each and every part thereof, the defendant's attorney excepted. The jury returned a verdict for the plaintiff upon which judgment was entered, and from which the defendant appealed.

*J. M. Gillett*, for appellant. As to the sufficiency of the complaint, cited R. S., chap. 141, sec. 4; *Van Buren v. Putnam*, 7 How. Pr., 33; *Ensign v. Sherman*, 13 id., 35; *Mosely v. Albany & N. R. R. R. Co.*, 14 id., 73; 14 How. Pr., 73; 19 Barb., 484. As to the validity of the execution, 1 Burr Prac., 288;

6 Term., 525; and as to the time of notice of sale, 3 Denio, 594; 1 Comst., 79; and he contended that the charge to the jury, as to the homestead question, was erroneous.

*Billinghurst & Lewis*, for respondent, cited Crocker on Sheriffs, 211; 2 Cowen and Hill's Notes, 1074; *Wheaton v. Sexton*, 4 Wheat., 506; *Jackson v. Streeter*, 5 Cow., 629; R. S., chap 134, sec. 42; *Jackson v. Walker*, 4 Wend., 462.

*By the Court*, COLE, J.   Notwithstanding the numerous exceptions taken to the ruling of the court on the trial of this cause, we can discover no error which we deem material, or which could have prejudiced the appellant, except, perhaps, the one involved in the charge to the jury, which will be considered in another place.

The complaint is full, and most unquestionably states a good cause of action for the recovery of real estate.

If there were any variances between the allegations in the complaint and the proof offered, or between the judgments, executions and recitals of the sheriff's deed, they were immaterial.   It is not pretended, nor can it be assumed, that any one was misled by these variances, and they certainly were of such a character that the court might properly disregard them.

Some stress is laid upon the objection that the execution on the judgment against *Graves* and Smith was issued against *Graves* alone.   But there was no irregularity in this, under the circumstances.   Smith was merely surety on the appeal from the justice, and as no execution was issued on the judgment within thirty days after the rendition thereof, he was discharged by the express language of the statute.   Sec. 246, ch. 88, R. S., 1849.   There surely could be no sense in requiring the execution to be issued against Smith, when he had been released from all liability on the judgment, and his property was not subject to levy and sale on the writ.

And without stopping to notice specifically all the other exceptions taken to the ruling of the court as to the admission or

exclusion of testimony, we will merely say that we regard them equally untenable as the objection just disposed of.

The respondent derived title to the lands in controversy, under a sale on executions and a sheriff's deed. The appellant claims that the greater portion of the lands were exempt from such sale, because they constituted his homestead. One of the judgments upon which an execution was issued, was filed and docketed in April, 1857. The question is, was any portion of these lands, at that time exempt?

There was testimony offered on the trial which tended to show that the appellant, in 1849, went into possession of a tract of an hundred acres, including the land in question, in the south part of the south-west quarter of section thirty-five, town eleven, range fifteen, in Dodge county, which he occupied and cultivated as a farm. In the spring of 1850, he rented this farm to a tenant, and removed with his family to Horicon, where he purchased lots and erected a house for a tavern, which he kept as such for five or six years. In May, 1856, he rented his tavern stand, and moved back upon his farm. Where he remained until the last of February, or sometime in March, 1857, when he again rented the farm and removed back to Horicon, and, with his family, boarded at the tavern owned by him, until after the premises had been levied on under the execution.

Under this state of facts it became a legitimate and proper matter for the jury to consider, whether the appellant could claim any portion of the farm for a homestead. In other words, it was for them to say, upon all the evidence; whether he had only removed from the farm for a temporary purpose, intending, as soon as circumstances would allow, to return and occupy it as and for a homestead; or whether, he had in fact removed from the farm without any such intent of returning to it, but had taken up his residence in Horicon, with a view of keeping a public house at that place. If he had left the farm with the latter intention, then it is quite obvious that he

could not claim forty acres of his farm for a homestead. For in the case supposed, he would really have taken up his residence in Horicon, and would there have his homestead. For the statute makes occupancy and possession by the owner an essential feature or characteristic of a homestead; and it would be a solecism to say that a man's homestead was in one place, when, in truth and fact, he resided elsewhere. From this it must not be assumed that a party would lose his homstead when he ceased to actually live upon it with his family. This, we think, is too narrow a construction of the statute. And, hence, we have held, in a case decided at this term, that a party would not forfeit the exemption on being absent from home a season, travelling with his family, even though he should rent the premises to a tenant in the mean time, or should be prevented, by some temporary necessity, from occupying his homestead for a time with his family. *In the matter of the application of Knox, administrator, for license to sell real estate, ante p* 76. In these cases a party is only absent from home on pleasure or business, or is unable to actually occupy it from some temporary cause, and cannot be said to have abandoned the homestead with the intention of acquiring another elsewhere.

Now, in case the jury had been satisfied from the evidence, that the appellant had only temporarily removed from his farm, and intended to return and make it his homestead, we are unable to see why forty acres of land, including the dwelling house, might not be claimed as such.

It appears that the appellant, when notified by the officer that a levy had been made upon the south half of the one hundred acre tract, claimed his homestead from that land. He says in his testimony, that he claimed forty acres off the west part of the south half of the tract. We presume this was intended to, (if it did not actually) embrace his dwelling house. It further appears, however, that the dwelling house did not stand upon the south fifty acres. And in view of

these facts, the court charged the jury, in substance, that a party could not have a homestead without a house upon it, and that if the house did not stand wholly upon the forty acres claimed, the premises were not exempt. Now, as already observed, if the appellant was entitled to claim forty acres of the farm for his homestead at all, we think he ought not to be held to have forfeited the exemption because he designated the particular land claimed, in the way he did. He claimed a certain portion of the tract for his homestead. He designated forty acres off the west part of the south half of the tract. Whether the forty acres thus laid off would embrace the entire site of the dwelling house or not, we do not deem very material. He undoubtedly intended by this designation to include the dwelling house and its appurtenances. And when he notified the officer of the selection made, if the creditor was dissatisfied with it, the officer might have caused a survey to have been made under the statute, setting off the forty acres in a compact form on that part of the tract designated, including the dwelling house and its appurtenances. This is what the statute requires to be done in such a case. Section 54, chap. 102, R. S., 1849. But we are not disposed to hold that the appellant lost the benefit of the exemption, because, by the strict literal meaning of the language used by him, the forty acre tract named by him did not include the entire site of the dwelling house. The designation was sufficient to identify and define with reasonable certainty the property which he claimed for a homestead. And it was but fair to presume that he intended by his selection to embrace the dwelling house and its appurtenances. The statute, it is true, declares that the house-holder may notify the officer, at the time levy is made, of what he regards as his homestead, and may give him a description by metes and bounds. But it does not provide that he shall forfeit the privilege unless he does this. The obvious intent of the statute is, to secure the debtor and

his family a home; and this humane purpose ought not to be defeated on slight grounds. It would hardly be consistent with this manifest intention, to say that a party must, at his peril, designate with absolute precision and accuracy the very forty acre tract including his dwelling house and its appurtenances, or forfeit the exemption altogether. This would be a most unreasonable construction of the law. And therefore when, as in this case, a person claims from a larger tract, forty acres as his homestead, it should be assumed that he intended the land should be laid off where he designated in such a manner as to include his dwelling house and its appurtenances. It is not to be presumed that he had reference to any particular government subdivision, or any rectilinear lines. But the land, including such dwelling, should be laid off where claimed, in as compact form as possible. The court held that if the claim made, turned out to be of land upon which the dwelling house is not wholly or the greater part situated, the exemption would not apply. And again, the jury was instructed, that if the appellant claimed a homestead when he notified the sheriff, but did not specify his claim by a particular description, the claim would be bad. This instruction, we think, was calculated to prejudice the appellant, provided, under the circumstances, the jury should be satisfied that he could claim any portion of the farm for a homestead. The main object of any selection of a homestead, is to identify and define the property to which the exemption applies, so as to distinguish it from that which may be sold by creditors. And when a debtor states with reasonable certainty what he regards as his homestead, it is sufficient. If the creditor is not satisfied with this designation, he can cause the officer to make out a survey according to the provisions of the statute.

It follows from this view that the judgment of the circuit court must be reversed, and new trial ordered.