JARVAIS and wife vs. MOE and others.

HOMESTEAD EXEMPTION. (1) *Exemption applies only to debtor's actual home.* (2–5) *By what removal or absence a former home may be lost. Evidence in such cases.* (6) *Case stated.*

1. Under the homestead exemption law as amended in 1858 (Tay. Stats., 550, § 30), it is still only the actual home of the debtor which is exempt; and the removal or absence which will not destroy the exemption is one for a temporary purpose, with the certain and abiding intention of returning, and such as is not inconsistent with the fact that the premises still remain the residence of the owner.

2. A person cannot have two homes at the same time; and such a removal as gains a new home is an abandonment of the old.

3. The presumption is that a person is at home where he is found living; but this presumption may be rebutted by showing his abode temporary, and his home elsewhere.

4. The presumption that a person who removes with his family from one dwelling house to another, owned by himself, does so *animo manendi*, may be rebutted by circumstances and conditions of the removal, or declarations accompanying it, manifesting a temporary purpose in such removal and an intention to return; but cannot be satisfactorily rebutted by professions made only after intervening occurrences had made a return advantageous.

5. The intention which is sufficient to rebut such presumption must be positive and certain, not conditional or indefinite.

6. Plaintiff removed from his former home without manifesting any intention to return to it, renting it to other persons, and moving with his family into another building owned by him in the same city, for the purpose of keeping a hotel in such building. He now claims that he did this for the purpose of establishing the hotel and keeping it until he could rent or sell it, and of then returning to his former home. He remained in the hotel eighteen months, leaving it only when it became obvious that he could not maintain his title to it against incumbrances upon it; and his testimony tends to show that had his hotel keeping prospered, he would have continued it indefinitely, unless he could have sold or rented the property to his satisfaction. *Held*, that he must be regarded as having acquired a new residence, on his hotel property, abandoning his former homestead, and cannot now hold the latter premises exempt from the lien of a judgment recovered against him after his removal and before his return to them.

Jarvais and wife vs. Moe and others.

APPEAL from the Circuit Court for *La Crosse* County.

Action to restrain the sale of a house and lot belonging to the plaintiffs, in the city of La Crosse, upon execution to satisfy a judgment rendered against the plaintiff *Nicholas Jarvais* in July, 1873; plaintiffs claiming that the house has been held and occupied by them as a homestead since 1870, and that, as such homestead, it is exempt from sale on the execution. The sheriff and his deputy, and the judgment plaintiffs, were made defendants. The answer alleged, that at the time of the rendition and docketing of the judgment in question, plaintiffs owned and occupied as their homestead a certain other lot and building in said city of La Crosse, known as the "Bellevue House;" and it denies that the premises described in the complaint constituted, at that time, their homestead, or were exempt from the lien of the judgment.

The view taken by this court of the effect of the evidence as to the questions of fact involved, will sufficiently appear from the opinion.

The circuit judge found that the material allegations of fact in the complaint were true; and judgment was rendered for the plaintiffs, as demanded; from which the defendants appealed.

*M. P. Wing* and *G. C. Prentiss*, for appellants, contended that under the statute (R. S., ch. 134, sec. 23; Tay. Stats., 1548, § 23), *occupancy* is one of the essential requisites of a homestead (*Herrick v. Graves*, 16 Wis., 157; *Estate of Phelan*, id., 76; *Phelps v. Rooney*, 9 id., 70); that ch. 137 of 1858 (Tay. Stats., 1550, § 30) was adopted in consequence of the decision in *Hoyt v. Howe*, 3 Wis., 760 (that the act of selling or removing from a homestead rendered it liable to sale on execution under a judgment dockeded *previously* to such sale or removal), and the act was intended to apply only to judgments existing *at the time* of the removal or sale; and that as the premises here in question were not occupied by the plaintiffs as a homestead at the time defendants' judgment was docketed, that judgment became a lien on them, which lien could not be divested by any subse-

quent act of the plaintiffs. *Upman v. Second Ward Bank*, 15 Wis., 449; *Bridge v. Ward*, 35 id., 687. Counsel further contended that the question is properly one of *facts*, and not of intentions; especially when the intentions can be shown only by the declarations of the interested party.

*Stogdill & Daniels*, for respondents, argued that the statutes relating to exemption of property from sale on execution are to be liberally construed (*Connaughton v. Sands*, 32 Wis., 391; 33 id., 510); that if plaintiffs had continued to live on their homestead, it would unquestionably be exempt (Tay. Stats., 1548, § 23); and that their temporary removal therefrom, with intent to return, as shown by the evidence, did not render it liable to sale to satisfy a judgment docketed during their absence. Ch. 137 of 1858 (Tay. Stats., 1550, § 30); *Herrick v. Graves*, 16 Wis., 165; *Borrman v. Schober*, 18 id., 437; *Estate of Phelan*, 16 id., 77.

RYAN, C. J. Under the statute regulating the homestead exemption, as it stood before the act of 1858, this court held that when the "land ceases to be the homestead of the debtor by his lawful act and with his full consent," the exemption ceased. The case turned upon a conveyance of the homestead. But the only qualification of the broad rule suggested by the court was, that it was not intended " to hold that if the dwelling house, situated upon the homestead and forming part of it, should be consumed by fire, or should by any accident become untenantable, it would at once lose its character and become subject to sale." *Hoyt v. Howe*, 3 Wis., 752, affirmed in *Simmons v. Johnson*, 14 id., 523, and *Trustees, etc., v. Schell*, 17 id., 308. *Hoyt v. Howe* was decided in 1854. Then came the statute of 1858.

The subject does not appear to have been considered in any case between *Hoyt v. Howe* and the act of 1858. But after the passage of that act, speaking of the law before and after its passage, the late Mr. Justice PAINE used this language:

"It seems clear that the premises sought to be sold were not the homestead of the deceased. He moved from them in 1854, and never resided on them afterwards, but rented them to several tenants. We do not intend to say that even previous to the law of 1858, a departure from the homestead for temporary purposes would have forfeited the exemption." "Such kinds of absence as are not inconsistent with the fact that the premises still remain the residence of the owner, would not forfeit the exemption." "But when the owner of a house and lot voluntarily removes from it, and takes up another residence in the same town, not from any temporary necessity, for the purpose of repairing the homestead or otherwise, but with a view to the more convenient transaction of business elsewhere, renting the old home to other parties, it can no longer be said to be his homestead; and a vague intention to return perhaps at some future time and reside there again, would not make it such. For in the meantime, his residence, his home, would be at his new abode." "Where the residence was actually changed and the old home rented for hire, the exemption ceased, because the homestead ceased. This would have been the law prior to the act of 1858." "Whether that statute was intended to allow the debtor to remove from his homestead and rent it to a tenant, and actually take a new residence elsewhere, and still retain his exemption, is a question which, when it arises, will deserve serious consideration. That act was undoubtedly passed to change the law as it was established in *Hoyt v. Howe,* 3 Wis., 753. But that was a case of alienation of the homestead; and a change of the rule in that case, so far as related to alienation, was perhaps necessary to fully accomplish the object of the exemption. But the act not only provides for that, but also that a removal from the homestead shall not render it liable to forced sale." *Re Phelan,* 16 Wis., 76. And in a later case, at the same term, approving these views, COLE, J., speaking of absence which would not, before the act of 1858, work a forfeiture of the exemption, remarks:

"In these cases a party is only absent from home on pleasure or business, or is unable to occupy it from some temporary cause, and cannot be said to have abandoned the homestead with the intention of acquiring another elsewhere." And he says: "It would be a solecism to say that a man's homestead was in one place, when in truth and fact he resided elsewhere." *Herrick v. Graves*, 16 Wis., 157. The same learned judge had before said of the subject of exemption: "It is the land upon which is situated the dwelling house, residence or abode of the owner, and where such owner resides with his family, that the statute makes the *homestead;* where is situated the dwelling house used as a *home*. The chief characteristic or attribute of the homestead therefore is, what indeed the word itself implies, that it is the land where is situated the dwelling of the owner and family." *Bunker v. Locke*, 15 Wis., 635.

Such was the construction of the statute, as it stood before the act of 1858; a construction, however, not given until after the passage of that act, and very greatly enlarging the freedom of removal stated in *Hoyt v. Howe*. That act was certainly intended to change the rule held in that case upon conveyance, and does change it. It was certainly intended to enlarge the rule indicated in that case upon removal, and does enlarge it. But we cannot think that it was intended to give a larger rule upon removal than is declared in *Re Phelan* and *Herrick v. Graves*, or does enlarge the rule in those cases. We think that it was intended to establish, and does establish, the very rule which this court subsequently held upon the statute as it stood before.

It was the legislative policy to save their homes to judgment debtors and their families. The rule in *Hoyt v. Howe* avoided the exemption upon conveyance; and the language of the court implied its avoidance upon removal, except upon purely accidental occasions. So that a judgment debtor could enjoy his homestead exempt, but could not, without forfeiture of the exemption, change it by sale and purchase; could hold it ex-

empt in his actual possession (*ponere sedes*), but apparently could not, without forfeiture of the exemption, suspend his occupancy, unless upon casual necessity. And the obvious design of the legislature, in the act of 1858, was so to change the rule of *Hoyt v. Howe*, as it was then understood, as to leave judgment debtors as free as other persons to change their homes by sale, and to be absent for temporary convenience, without forfeiture of the exemption. But the homestead is the sole subject of the statute, and both provisions apply in terms to the actual homestead only; not to what might have been or might become his homestead, but to the judgment debtor's homestead *in esse*, his actual and continuous home for the whole time of exemptio n. *Upman v. Bank*, 15 Wis., 449.

What the owner may convey, under the statute, is in terms his homestead at the time of conveyance, ceasing to be so only by the act of alienation. What he may remove from, without forfeiture of exemption, is his homestead. What is to remain exempt to him, notwithstanding removal, is his homestead. What shall not become subject to judgment lien, by force of removal, is his homestead. What is exempt is always, in the terms of the statute, his homestead when exempt. The statute applies only to the homestead, while it is the homestead, and because it is the homestead: the actual abiding home of the owner, though he be absent from it by removal: still "owned and occupied" by the debtor in the terms of the earlier statute, though the later statute allows the possession of the house and land to be constructive only during temporary absence, in right of the continuing home. And the statutory removal is essentially temporary, *animo redeundi*, "such kind of absence as is not inconsistent with the fact that the premises still remain the residence of the owner" (*Re Phelan, supra*); for ceasing the home, the exemption ceases by both the letter and the spirit of the statute.

The statute does not limit the measure of removal, but it does the kind of removal. Absence is licensed without limit,

so that the homestead remain the homestead, for the exemption to operate upon. As suggested by PAINE, J., in *Re Phelan*, the owner may visit the antipodes, without forfeiture of his exemption, so that his purpose be essentially temporary, *animo revertendi* to his homestead as his homestead, and not of indefinite absence. *Re Miller's Estate*, 3 Rawle, 312. But if his removal be *animo manendi*, or to live elsewhere indefinitely, so that he could acquire another home, the exemption of his former homestead ceases, because it ceases to be his homestead. A homestead is the place of the dwelling house (*Woodman v. Lane*, 7 N. H., 241); the land contiguous and appurtenant to a home (2 Metc., 45). A person may live in successive homes, but can have one home only at one time. He may have several houses at once, but one only can be his home at a time. 5 Metc., 588. The presumption is that he is at home where he is found living. 1 Kent, 76. The presumption may be rebutted by showing his abode temporary, and his home elsewhere. But to preserve his home upon removal from it, the temporary purpose, the *animus revertendi*, must be certain and definite. "A vague intention to return perhaps at some future time and reside there again," will not preserve his home. PAINE, J., *supra*. As a temporary abode is not a home, so a temporary removal from home is not an abandonment of it. But such a removal as gains a new home, is an abandonment of the old homestead. The removal of the statute must be with a certain and abiding purpose of return.

We are not unmindful of the beneficent character of the statute, or of our duty to construe it liberally in favor of its object. This court has always expressed its disposition to give it such construction (*Gilman v. Williams*, 7 Wis., 329; *Connaughton v. Sands*, 32 id., 387; *Kuntz v. Kinney*, 33 id., 510); and better proved that disposition, perhaps, by the rule in *Phelps v. Rooney*, 9 Wis., 70. But it is no less our duty to guard the humane provisions of the statute against abuse.

If we were to give a different construction to the act of 1858,

Jarvais and wife vs. Moe and others.

if we should hold that statute as continuing the exemption, notwithstanding permanent removal, what' had once been the owner's homestead would remain exempt to him after it had ceased to be his homestead, after he might have acquired elsewhere another homestead also exempt. And it might come to pass that one person might enjoy a plurality of exemptions for his homestead at the same time; and that exemption, once established in a property, might become an estate for life, almost a perpetuity, under the statute, independent of use. This would be a fraud upon the letter and the spirit of the statute, and a reproach to the principle of exemption. The statute will bear no such construction, and ought not to bear it.

The essential principle of the statute, corresponding with its letter, limits the exemption to one actual, continuous homestead. As a rule our people live in homesteads which they own. One selling his homestead may well be presumed to do so, not for the purpose of abandoning, but for the purpose of changing his home, selling here to buy there; and the exemption is made to cover the change. And so the removal licensed is not removal from one homestead to another; not such removal as would be consistent with the gaining of another homestead; but such removal only as suspends the continuous possession without suspending the continuous home.

The premises in controversy in this case appear to have been the undoubted homestead of the respondent *Nicholas Jarvais*, before his removal from them. He appears to have removed from them without any manifestation of intention to return to them or to retain them as his home; renting them to other occupants. He moved with his family to another building which he owned, in the same city. He had before been a hotel keeper. And he made the removal for the purpose of keeping a hotel in the building to which he removed. He claims that he did so for the purpose of establishing the hotel and keeping it until he could rent or sell it, and of then returning to the premises in controversy. The evidence of this is not very satisfac-

sory; but we cannot think so vague and conditional a purpose sufficient to control the question. He remained in the hotel for some eighteen months, leaving it only when it was obvious that he could not maintain his title to it against the incumbrances upon it. His own testimony leaves no ground to doubt that, had his hotel keeping prospered, he would have continued it indefinitely, unless he could sell or rent the property to his satisfaction. And the intention which he claims for himself to resume his former homestead, appears to be closely connected in motive and in time with the failure of the hotel.

When he made the removal, the presumption was that he did so *animo manendi.* 1 Kent, 76. The presumption might be rebutted by circumstances and conditions surrounding the removal, or declarations accompanying it, manifesting a temporary purpose and an intention to return; but not satisfactorily by *ex post facto* professions, after intervening occurrences had made return advantageous. The intention which is sufficient to rebut the presumption must be positive and certain, not conditional or indefinite. Certain it is that the respondent gained a new residence on his other property. " Where the owner of a house and lot voluntarily removes from it and takes up another residence in the same town, * * with a view to the more convenient transaction of business, * * it can no longer be said to be his homestead. * *' His residence, his home, would be at his new abode." It is certain that the respondent was at home in his hotel while he kept it. By the rule in *Rooney v. Phelps, supra,* he acquired the right to claim exemption of the hotel, as his homestead, as in fact it was. And we cannot doubt, from the evidence, that he would have done so had it been for his interest. Had he done so, all the evidence which he now gives to show that his homestead was elsewhere, would not have availed to defeat his claim.

The respondent's right of exemption could not be double or ambiguous. His right in possession, the occupation of the statute, excluded all right elsewhere by intention or construc-

tion. And his statutory right of removal applied to his hotel property, not to the premises in controversy. They were not his homestead when the appellant's judgment was recovered. The judgment was a lien upon them when he resumed possession of them. And this case is within *Upman v. Bank, supra.*

This view makes other questions in the case immaterial, and we shall not consider them.

*By the Court.* — The judgment of the court below is reversed, and the cause remanded with directions to the court below to dismiss the complaint.