BIXBY (SAWYER v.) See Case No. 12,398.

---

## Case No. 1,453.

In re BJORNSTAD.

[9 Biss. 13;[1] 18 N. B. R. 282.]

District Court, W. D. Wisconsin. May, 1878.

EXEMPTIONS OF MERCHANTS — CONSTRUCTION OF STATUTE—DISSOLUTION OF PARTNERSHIP — INDIVIDUAL EXEMPTION.

1. The provision in the statutes of Wisconsin providing for the exemption of "the tools and

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

implements or stock in trade of any mechanic, miner or other person, used and kept for the purpose of carrying on his trade or business, not exceeding $200 in value," applies to merchants.

2. If a partnership is dissolved and the partnership stock is transferred to one of the partners, the right of exemption, under the exemption laws, attaches on the part of such owner of the property, even against partnership creditors.

[See In re Whetmore, Case No. 17,508; In re Robinson, Id. 11,933; In re Parker, Id. 10,724.]

[In bankruptcy. Jorgen Bjornstad, a bankrupt merchant, claims an exemption of stock in trade to the value of $200, under 2 Tayl. St. Wis. c. 134, § 32, subd. 9, which was allowed.

[For proceedings on application for discharge of the bankrupt, see 5 Fed. 791.]

J. H. Carpenter and Rufus B. Smith, for bankrupt.

H. M. & H. A. Lewis, for opposing creditors.

BUNN, District Judge. The facts as stipulated by the parties are these: That in October, 1875, the bankrupt and one Martin Madson formed a copartnership for general merchandising which they carried on until about February 27, 1878, under the firm name of Bjornstad & Co., during which time they contracted debts, which are still unpaid, to the amount of about $5,000; that about February 27, 1878, they dissolved the partnership, Madson selling out his interest in the concern to Bjornstad, who took the stock, amounting to about $2,650, assumed the partnership debts, and thereafter till the time of filing the petition in bankruptcy carried on the business in his individual behalf.

The question submitted is whether the bankrupt is entitled to $200 exemption of the stock in trade, under subdivision 9, § 32, c. 134, p. 1551, 2 Tayl. St. Wis. That subdivision is as follows: "The tools and implements or stock in trade of any mechanic, miner or other person, used and kept for the purpose of carrying on his trade or business, not exceeding two hundred dollars in value."

It is insisted by the attorneys for the assignee that this provision does not extend to merchants, but only to miners and mechanics and to other persons to whom tools and implements are necessary to carry on their business, on the principle of noscitur à sociis; and the argument seems very plausible to say the least. The question is, whether it is conclusive. There is one circumstance which in my judgment should have great weight in determining the question of exemption, and that is the uniform construction that has been placed upon the language of this subdivision in the state. Though, strange to say, the question has never been directly decided by the supreme court of the state, it has been decided again and again in the several circuit courts, and so far as my information goes, always in favor of the more liberal construction that would extend the exemption to merchants as well as mechanics and miners. And I think this has been the general practice and understanding of the courts and of the profession, to allow the exemption.

In some of the circuits at least, of my own knowledge, the statute has been so construed by successive circuit judges for upwards of twenty years, and the rule become well settled and undisputed; and I am informed that such is the case in other circuits.

In the absence of any decision to the contrary by the highest court of the state I think it is not too much to say that the decisions and practice of the circuit courts may be taken as the law. And accordingly it has been the uniform practice in this court, and I understand also in the eastern district, ever since the bankrupt law went into effect, to allow the exemption. This uniform and concurrent practice, acquiesced in for so long a time in the state and federal courts, might be taken as conclusive of the law. But as the question may arise again it may be well enough to look at it a little de novo.

Our constitutional provision is as follows: "The privilege of the debtor to enjoy the necessary comforts of life shall be recognized by wholesome laws, exempting a reasonable amount of property from seizure and sale for the payment of any debt or liability hereafter contracted." Const. Wis. art. 1, § 17. It was incumbent on the legislature to carry out this beneficent provision of the constitution, and it did so at an early day, in an enlightened and liberal manner according to the spirit and purpose of the provision.

As the provision is general, applying to all debtors, it is fair to infer in order to carry it out according to its spirit and purpose, that all classes of persons should be recognized, and so far as possible equally provided for, and that in making general provisions for exemptions as the legislature did, it intended to carry out the constitutional provision in a manner to cause its benefits to be shared in as equal a manner as possible by all classes of debtors. And it would seem, if the statute is fairly capable of such a construction, it should be so construed. I am inclined to think it is. The exemption laws are remedial and beneficent acts of legislation, and are to be liberally interpreted and administered to carry out the constitutional provision. Gilman v. Williams, 7 Wis. 329.

Section 23, c. 134, 2 Tayl. St. Wis., exempting a homestead, applies to all classes of debtors.

Subdivisions 1–6, § 32, exempting the family Bible, family pictures and school books, family library, pew in a church, wearing apparel and household goods, apply equally to all classes of debtors.

Subdivision 7, exempting two cows, ten swine, one yoke of oxen and one horse, or

in lieu thereof a span of horses, ten sheep, and the wool from the same, either in the new material or manufactured into yarn or cloth; the necessary food for all the stock mentioned in this section for one year's support, either provided or growing, or both, as the debtor may choose; also one wagon, cart or dray, one sleigh, one plow, one drag, and other farming utensils, including tackle for teams, not exceeding fifty dollars in value; though in terms applying to all classes of persons, from the nature of the articles exempted, applies to a much larger extent to farmers than any other class, because they are the only persons that ever keep or have any use for many of the articles named as exempt.

Subdivision 8, exempts provisions for the debtor and his family necessary for one year's support, either provided or growing, or both, and fuel necessary for one year—and applies to all classes. Then follows subdivision 9, first above quoted, which provides for mechanics, miners, etc., and also in a subsequent part of the subdivision exempts the library and implements of any professional man, not exceeding two hundred dollars. And then follow many specific acts scattered through the session laws, making provisions for certain classes of debtors. One exempts all sewing machines kept for use in families, another all printing materials and press or presses used in the business of any printer or publisher, to an amount not exceeding $1,500 in value.

Another exempts horses, arms, equipments and uniforms of all officers and privates in the organized militia of the state.

Another exempts all books, maps, plats and other papers kept or used by any person for the purpose of making abstracts of title to land.

Another exempts the interest owned by any inventor in any invention secured to him by letters patent of the United States.

Another the earnings of all married persons and all other persons who have to provide for the entire support of a family for sixty days next preceding the issuing of any process of attachment or execution, etc. This provision was undoubtedly intended mainly for the benefit of laborers. There are still other specific provisions which it is not necessary to enumerate.

It will be seen that besides the general provisions which apply to all classes there are specific ones applying to all the leading industrial classes of the community, unless it be the merchant. The farmer, the mechanic, the miner, the professional man, the printer, the military man, the laborer, are all snugly and expressly provided for under the various clauses of the exemption law against the stroke of accident and chance of time.

Now there would seem to be as much reason for making provision for the merchant as any other class. They are certainly quite as likely to be overtaken by misfortune and to need the exemption. It is insisted that while two hundred dollars of tools and stock in trade would be of some use to enable the mechanic to pursue his trade, that two hundred dollars stock in trade would not be enough to set a merchant up in business or be of much practical use to him. But it is submitted that although it would not go far as stock in trade, even so small an amount protected by the beneficence of the law from the rapacity of creditors in the hour of adversity might do something toward keeping starvation from his family, while he should have a little time in which to look about and either make arrangements to continue in business or turn his hand to some other employment.

In the case of Bevitt v. Crandall, 19 Wis. 581, a farmer claimed as exempt under the same subdivision, a grain drill worth eighty dollars. But the court very justly held that although a literal construction would include the farmer, that it never could have been intended to apply to him, because he was specifically and liberally provided for in subdivision 7, which exempts his team and tackle, sheep, cows, swine, the food for a year's support of the same, wagon, cart, sleigh, plow, drag and other farming utensils not exceeding $50 in value.

But, by parity of reasoning, the same provision should apply to the merchant, because he is nowhere else provided for.

When we look at the language of the section and compare it with all the other provisions, keeping in view the presumed intention of the constitution and the legislature to make equitable provisions for all classes, it would seem that there is strong reason for holding that it was intended in this subdivision to provide for merchants.

I am referred to the case of Grimes v. Bryne, 2 Minn. 89 [Gil. 72], as an authority the other way. I am not clear but that case, as well as Guptil v. McFee, 9 Kan. 30, which follows the Minnesota case, is against the construction which has generally obtained in relation to this provision of our statute, and which I am disposed to follow.

But there is one consideration which is very noticeable, and that is, the difference in the language of the two statutes. The provision of the Minnesota statute is: "The tools and implements of any mechanic, miner, or other person, used or kept for the purpose of carrying on his trade or business; and, in addition thereto, stock in trade, not exceeding four hundred dollars in value." The words, "and in addition thereto, stock in trade," would seem to indicate that it was the intention that the exemption of stock in trade should apply only to the same class of persons provided for in the previous part of the section and not merchants to whom tools and instruments are not necessary to their business. And so the court looked upon it, for they say: "In addition to what? Why

manifestly in addition to tools and implements above exempted. The legislature did not intend to leave the tools of the shoemaker or harness-maker in his hands and deprive him of the means of using them. They gave him a stock of material to work upon to render the provisions of exemption of some utility. The two clauses must stand together to bring either in harmony with the spirit of the law. The stock would be worthless without the tools, and the tools idle without the stock."

The language of our statute is different, and I am inclined to think the provision different in substance. The use of the disjunctive "or" in the language, "The tools and implements or stock in trade of any mechanic, miner or other person," would seem to indicate a purpose of providing for two classes of persons: that is to say, for mechanics, miners and others, to the exercise of whose trade or business, tools or implements are necessary; and to another class of persons like merchants, to whose business, stock in trade is essential, but tools and implements are not. I think, at any rate, the language will fairly bear this construction. It is certainly broad enough if interpreted anyways literally, to include merchants, and considering the beneficent purpose of the law to make reasonable and equal provision for all classes of the community, I am disposed to think that the maxim noscitur à sociis should not in this case prevail over all other principles of construction, so as to deny to so large and useful a class of the community an equal participation and enjoyment of the exemption law.

That it should be applied to the extent of excluding farmers and others, who are otherwise specifically provided for as held by Dixon, C. J., in Bevitt v. Crandall, supra, I have no sort of objection. Still, I do not think it requires a resort to that maxim, to hold that this provision was never intended to apply to farmers.

But it is claimed the exemption should not be allowed, because the debts are partnership debts, and that when contracted, the property belonged to the partnership; and there is some show of reason, as well as authority, for this position; but, in the absence of any fraudulent intent, I see no reason why parties may not dissolve the partnership, sever their interest in the property, or one partner sell out his interest to the other, as was done in this case, and the partner continuing the business, and owning the goods, be allowed to claim his exemption, the same as though no partnership had ever existed. This would seem to be in accordance with the principles laid down by Ryan, C. J., in Russell v. Lennon, 39 Wis. 570. If, as is said in that case, each member of a partnership is, in proper cases, entitled to his separate exemption of the partnership property, and that the partnership property, after levy, may be severed by the partners, so that each partner may

have his several exemptions, it would seem to follow as a consequence of this doctrine, that if the partnership is dissolved and the partnership stock transferred to one of the partners, that it is no longer partnership property, and the right of exemption on the part of the owner of the property attaches.

But it is claimed that the joint creditors have a lien on the partnership property for the payment of the joint debts, and this is true in a certain qualified sense. It is clear law that, as between the joint creditors of the partnership and the separate creditors of the individual partners, the joint creditors are entitled to priority of payment from the partnership funds and the individual creditors from the individual funds of the partners. And, in this sense, they are said to have a lien on the partnership property, so that one partner cannot sell out his interest to a third person and prevent the payment of the joint debts; and such transfer conveys only to the purchaser the interest of the partner in the surplus after payment of the partnership debts. Menagh v. Whitwell, 52 N. Y. 146. But the lien is not a lien in the same sense that a mortgage or an execution levied is a lien, by any means. It is not a lien that transfers any title to the property, or any actual interest in it. The partnership creditors have just as much of a lien, and no other or greater on the partnership property, as the creditor of an individual debtor has on his property. Burns v. Harris, 67 N. C. 140.

There is, in short, nothing in such a lien to prevent one partner from selling his interest in the goods to his copartner and conferring a good title, if done in good faith, and with no intent to place the property beyond the reach of creditors.

It is true that at the time of the dissolution, the partnership was in debt, and their liabilities by far exceeded their assets. But there is nothing else tending to show fraud, and this of itself, is not enough.

If there had been any attempt to withdraw the funds and put them in a homestead or otherwise, beyond the reach of creditors, the case might come within the principle of In re Sauthoff [Case No. 12,379]. But, nothing appears to show the transaction was not bona fide.

And, upon the whole, I think the exemption should be allowed.

NOTE [from original report]. A partner withdrawing firm assets, upon dissolution, as his interest in the partnership, takes them subject to the rights of the firm creditors, if the fund remaining is insufficient for the payment of their debts. This is true, even though no fraud is intended, and the partners believed the remaining assets to be ample. And if the retiring partner invest the assets thus withdrawn by him, in a homestead, a court of equity will compel its surrender for the benefit of the creditors. In re Sauthoff [Case No. 12,380]. Partnership assets are a trust fund for the payment of the creditors of the firm, and no exemptions can be set apart from them to the individual partners, until all the partnership debts are paid. In re Croft [Id. 3,404].

See, also, Ex parte Robinson [Id. 11,933]. Since the date of the above opinion by Judge Bunn, the supreme court of Wisconsin has held in Wicker v. Comstock, 52 Wis. 315, 9 N. W. 25, that subdivision 8, § 2982, of the Revised Statutes of Wisconsin, which exempts from execution "the tools and implements, or stock in trade, of any mechanic, miner or other person, used or kept for the purpose of carrying on his trade or business, not exceeding two hundred dollars in value," applies to a stock of goods on sale by a merchant.