Howe and others vs. McGivern and another.

*Homestead — Administrator's Sale — Jurisdiction of probate court; What record must show.— Conveyance of unassigned dower.*

1. An administrator's sale of land, made after the homestead law of 1850 took effect, *held* void as against the heirs, where the land is shown to have been the intestate's homestead, and the record in probate does not affirmatively show an adjudication, either that it was *not* a homestead, or that there were debts contracted *before* the passage of that act, for which it was necessary to sell the land.

PAINE, J., was inclined to think that if it had been duly alleged in the probate court, either that the land was not the decedent's homestead, or that there were debts contracted prior to 1850 for which it was necessary to make sale, and the record had shown a distinct adjudication to that effect, the decision could not be attacked collaterally. The point, however, is not decided.

2. If the land descended to the heirs free of the intestate's debts, it would not become liable to sale for those debts by ceasing to be the family homestead; nor could the widow claim it by virtue of the *subsequent* act of 1858.

3. Dower not assigned cannot be transferred so as to be set up by a stranger as a defense to ejectment by the heirs.

APPEAL from the Circuit Court for *La Fayette* County.

Ejectment, for an undivided three-fourths of forty acres of farming land. Plaintiffs claimed as heirs-at-law of one Patrick Howe, who died seized of the land, apparently in 1850 or 1851. In December, 1858, one James was appointed administrator of the estate of said Patrick Howe, and defendants claim under a sale of the land made by him, under a license of the probate court, in July, 1859. The report and inventory of the administrator show, that all the estate of his decedent consisted of the forty-acre tract in question. His petition for license to sell states that he "has received no personal prop-.

erty of said deceased ; that the debts outstanding against said deceased amount to about fifty or seventy-five dollars, as petitioner believes ;'' that the deceased died seized of the land in question, valued at about $400 ; '' and that it is necessary to sell the same for the payment of said debts, and the expenses of administration in said matters.'' The order for a hearing, etc., after reciting the contents of the petition, proceeds : ''And it appearing that there is not sufficient personal estate in the hands of said administrator to pay said debts, and that it is necessary, in order to pay the same, to sell all of said real estate, it is therefore ordered,'' etc. The order of sale, after reciting due publication of notice of the former order, proceeds : ''And it satisfactorily appearing to the court that a sale of the following described real estate is necessary for the payment of valid claims against said deceased, and the charges of administration, it is ordered,'' etc. The remainder of the order need not be stated here. The land was sold to defendants for $360, and the sale was confirmed, and an administrator's deed executed to defendants in the usual form.

In May, 1859, the widow of Patrick Howe, for the expressed consideration of $150, executed a quitclaim deed of the land to James, and the latter quitclaimed it to the defendants.

In October, 1859, James rendered his account as administrator (which was allowed), showing items charged against the estate to the amount of $175.72, and a balance in his hands of $184.28. The character of these items will appear from the opinion, *infra*. The court, on the same day, made an order, which, after reciting that the debts, funeral charges, and expenses of administration, in the matter of said estate, had been fully paid, and that the residue of the estate was $184.28, assigned the same, in four equal parts, to the four heirs, and directed the administrator to pay over her part to one of the heirs,

who was then of age, and retain the others in his hands, the other three heirs being then minors. In 1865, the widow of said Patrick Howe, on her own petition, was appointed guardian of the plaintiffs, all of whom were then minors; and she received from the administrator the amounts so assigned to the plaintiffs, receipting to him therefor; but it appears that she had never paid over said amounts to the plaintiffs, two of whom were still minors when this action was brought.

It appears from the evidence that, after the death of Patrick Howe, his widow and the minor children lived on the land until 1855, since which time none of them had resided upon it, she having married a second time.

The court instructed the jury that the administrator's sale was void (the land being a homestead), and that the deed from the widow of Patrick Howe conveyed no interest of which defendants could avail themselves in this action. Verdict and judgment for the plaintiffs; and defendants appealed.

*M. M. Cothren*, for appellants, contended, 1. That a recovery by the plaintiffs in this action is inconsistent with the possessory rights of the widow of the deceased, and her grantees, since (1) she is entitled to a dower interest, which she or her grantees may occupy with the heirs; and (2) the descent was cast upon her by the law of 1858, under which her grantees now hold. 2. That the land was subject to the payment of debts contracted prior to February 9, 1850 (the date of the homestead act of that year, ch. 198, Laws of 1850), and that such debts existed. 3. That the abandonment of the land by the family subjected it to administration. 4. That the act of 1850 was repealed on the 1st of January, 1859 (R. S., p. 1025), which was *before* the administrator's sale in this case, so that that act does not apply here, while the provision of the present revised statutes in reference to homesteads (sec. 29, ch. 134) only exempts them from

sale on execution, and has no reference to the powers of a court of probate over the estate of a deceased person. 5. That the judgment of the probate court could not be inquired into in this collateral manner. R. S., ch. 94, sec. 62; *Atkins v. Kinnan*, 20 Wend. 245; *Jackson v. Robinson*, 4 id. 440; *Jackson v. Crawfords*, 12 id. 533; *Bostwick v. Atkins*, 3 Coms. 53; *Voorhees v. Bank of U. S.*, 10 Pet. 449; *Huff v. Hutchinson*, 14 How. 588; *Gould v. Stanton*, 16 Conn. 20; *La Guen v. Governeur*, 1 Johns. Cas. 492; *Gardner v. Buckbee*, 3 Cow. 120.

*P. A. Orton, Jr.*, for respondents, argued, among other things, that the probate court had no power to order a sale of the homestead. R. S., ch. 94, secs. 1 and 3; ch. 134, sec. 29; Laws of 1850, ch. 198. 2. If the want of jurisdiction appears affirmatively upon the record, such record is invalid on its face. If the record either asserts affirmatively the essential jurisdictional facts, or is silent concerning them, the facts showing a want of jurisdiction may be proven. *Rape v. Heaton*, 9 Wis. 330; *Pollard v. Wegener*, 13 id. 574; *Wanzer v. Howland*, 10 id. 16; *Sitzman v. Pacquette*, 13 id. 292; *Frederick v. Pacquette*, 19 id. 541; *Gibbs v. Shaw*, 17 id. 197; *Blackman v. Baumann*, 22 id. 612. Ch. 127, Laws of 1861, indeed, gives to licenses and other orders made by county courts affecting the sale of lands the effect of orders and judgments of courts of general jurisdiction. But if the record of a court of general jurisdiction discloses a want of jurisdiction, or if such want be established by proof, the record is void. But in this case the petition for a license does not allege, nor does the order determine, that the land was not a homestead, which was certainly necessary to make that question *res adjudicata*. 3. To the point that the widow's conveyance of her unassigned right of dower conveyed to defendants no interest in the land, counsel cited 1 Washb. R. P. 250–254; *Jackson v. Aspell*, 20 Johns. 410; 17 id. 166; 2 Cow. 638; 9 Mass. 13; 14 id. 378; 4 Paige, 448; 8 N. Y. 112; 13 Wend. 524.

PAINE, J.   Both parties admit that the title to the premises in question was in Patrick Howe at· the time of his death.   The plaintiffs claim the undivided three-fourths as his heirs-at-law ; the defendants claim the whole under his administrator's sale.   It is claimed that this sale was invalid, for the reason that the premises were the homestead of Patrick Howe at the time of his death, and, therefore, not liable to be sold by his administrator.   The fact that they were such homestead was clearly proved, and not disputed.   As his death occurred within a year or two after 1850, the exact time not appearing, the provisions of chapter 198, Laws of 1850, were applicable, and left the homestead liable to administrator's sale only for the payment of debts contracted prior to the passage of that act.   We agree with the respondent's counsel that the question whether the premises were the homestead was a jurisdictional one, and one which, upon the record of the probate court here presented, can be raised collaterally to show that the administrator's sale was void.   The general question of the right of every party against whom an alleged judgment or judicial proceeding is introduced, to inquire collaterally into the question of jurisdiction, whether arising upon the service of process or in relation to the subject-matter, has been very fully considered by this court in the cases referred to by counsel, and such right has been uniformly sustained.   But in the case of *Wanzer v. Howland*, 10 Wis. 8, we attempted to state the distinction between an entire absence of jurisdiction,—a lack of authority in the tribunal to take cognizance at all of the subject it had decided,—and those cases where the court is authorized to enter a certain judgment or order upon a particular state of facts, and, as preliminary to such action, to inquire whether the particular facts exist or not.   And we held that in the latter cases, the existence of such facts, although the essential foundation of the right of the court to proceed further, yet was not jurisdictional,

in that sense which would authorize a party, against whom they had once been so put in issue, tried and determined, to raise them again collaterally with a view to defeat the judgment or order against him, by showing that they did not exist in fact, and thus that there was no jurisdiction. We held that such facts, which the court was so authorized to try, bore the same relation to the question of jurisdiction as the existence in ordinary suits of a cause of action.

I am strongly of the opinion, that, inasmuch as the probate and county courts have jurisdiction to hear and determine all applications by administrators for license to sell the real estate of their decedents which is liable to sale, this necessarily involves the power of determining whether in any particular case the real estate sought to be sold is so liable or not. Such a power must exist somewhere, and wherever it does exist, when the fact is once properly alleged and decided, I do not readily see any reason why the determination would not have the same effect that ordinarily belongs to decisions by judicial tribunals, of questions which they are authorized to decide. And if in this case it had been alleged, before the probate court which authorized the sale, that the land was not the homestead of the decedent, and the court had so found, or if, being the homestead, it had been alleged that there were valid debts contracted prior to the act of 1850, for which it was necessary to sell it, and the court had so found, it would be difficult for me to take the case out of my own reasoning, in *Wanzer v. Howland*, or to distinguish it from *Brittain v. Kinnaird*, 1 Brod. & Bing. 432, which I there cited with approbation. Upon this point I have stated only my own views.

But we all agree that whatever effect might be given to the order of license made by the probate court in this case, if the facts above indicated, involving the liability of the land to sale, had been alleged and determined, still, where this does not appear, the fact remains open

as a jurisdictional one.   In such case it does not appear that the court had exercised the power of determining whether the land was a homestead or not, and had proceeded to make its order only after deciding that it was not.   The record is entirely consistent with the theory that it assumed the power to license the sale of an acknowledged homestead.   Such an assumption of power would be clearly void for want of jurisdiction.   This would be conceded if the fact appeared on the face of the record.   But even where it does not so appear, but the record is still consistent with that theory, where it does not show that the court exercised the power which it may have possessed of deciding upon the fact, and the exercise of which might have concluded the parties, its order must remain liable to be defeated by proof that the subject-matter which it assumed to dispose of was not within its jurisdiction.

Upon proof that the property was a homestead and not liable to sale by an administrator, to sustain a title under such sale against the heirs, if it can be sustained in any event, the record of the probate court granting the license should show affirmatively an adjudication that the property was not the homestead, or that there were debts contracted prior to the act of 1850 for which it was necessary to sell it.   In this record neither of these facts appears. There is no allegation upon them in the petition, and no finding upon them by the court; though it did appear and was recited in the license that the forty acres authorized to be sold was all the land the decedent owned. This, of course, was not conclusive that it was his homestead, though it rendered it highly probable, and tends to support the theory, with which the record is entirely consistent, that the probate court assumed the power to authorize the sale regardless of the question whether it was a homestead or not.

The vouchers, filed by the administrator on the settlement of his account subsequent to the sale, are no part

of the record by which the validity of the sale is to be tested. But if they were, they show very satisfactorily that this sale was unauthorized. Almost the entire bulk of the account is made up of the costs of the sale, the expenses of administration, and taxes on the land.

There is only one item that purports to have been for any debt of the deceased contracted prior to the act of 1850, and that was the doctor's bill of $6.75, which, it is said in the case, was for services in 1849 and 1850 ; so that even this may have been almost entirely contracted after the passage of that act. This debt was never allowed by commissioners, nor the judge of probate, and there was no allegation or finding that any part of it was contracted prior to that act. Nothing but the form of the bill for the services shows that fact.

For the reason, therefore, that the record of the probate court fails to show any allegation or finding that the land was not the homestead, or that it was liable, though a homestead, to sale for any debt contracted prior to the act of 1850, the sale must be held void.

If the lands descended to the heirs, released from any liability for the debts of their ancestor, although the family was afterward broken up, and the premises ceased to constitute its homestead, they would not thereby become liable to such sale.

The act of 1858, providing that on the death of the owner the homestead shall descend to the widow, who shall hold the same during her widowhood, which seems to be relied on by the appellant's counsel, has no application to the case. The owner having died several years before that act was passed, the homestead descended according to the law then in force.

The right of dower before assignment, being an inchoate right, cannot be so transferred by the widow to a stranger as to enable him to set it up as a defense to an action of ejectment by the heirs-at-law. See the authorities cited

by the respondent's counsel on this point; also *Carnall v. Wilson*, 21 Ark. 62.

There were no errors in the rulings of the court below, and the judgment must be affirmed.

*By the Court.* — Judgment affirmed.