Johnson vs. Harrison, Adm'r.

===

## JOHNSON vs. HARRISON, Adm'r.

HOMESTEAD. *(1) General policy of the homestead law. (2) Devise or descent of homestead unincumbered by specific lien. (3–6) Homestead of intestate, subject to specific lien: how to be disposed of. (5) Devise of a part of the homestead: how it affects the remainder.*

1. It is the policy of the law of this state to exempt the homestead and its proceeds from liability for the mere personal debts of its owner, not only during his lifetime but after his decease. Ch. 88 of 1863; ch. 270 of 1864; ch. 111 of 1873.

2. If the owner disposes of the homestead by will, the devisee takes it free from all judgments and claims against the testator; and if he dies intestate, it descends to the widow or heirs.

3. Where there is a mortgage or other specific lien upon the homestead subsisting at the time of the owner's decease, and the other estate is insufficient to discharge such lien, the county court is empowered to license a sale of the homestead; but, after discharge of the lien and payment of the expenses of administration, the proceeds of the sale are required to be invested, under the direction of the county judge, for the benefit of the family, or to be used for the purchase of another homestead.

4. If the deceased dies intestate without a family, and it becomes necessary to sell the homestead to satisfy a lien upon it, the surplus proceeds must be distributed according to law, and are not subject to the general debts of the estate.

5. Where the homestead consists of forty acres of agricultural land with the dwelling-house thereon, and the owner devises a part of the forty acres, including the dwelling-house and its appurtenances, this does not divest the remainder of the forty acres of the character of homestead, or make it liable for the testator's debts.

6. After a sale of a part of a homestead (belonging to an estate) to satisfy a

mortgage thereof, the mortgagee (in this case one of the heirs), in whose favor an unsecured claim against the estate has been allowed, is in no better position than other general creditors of the estate; and the surplus is not subject to the payment of his claim.

APPEAL from the Circuit Court for *Dodge* County.

This was an appeal from a judgment of the circuit court, reversing an order of the county court by which the adminis- trator of the estate of Philip Wood was directed to pay the claim of the plaintiff, *Mrs. Corlista A. Johnson,* against the estate, out of a certain fund in his hands. The facts are thus stated by Mr. Justice COLE in his opinion as originally pre- pared:

"It appears that when Philip Wood died, he owned and occupied forty acres of land as and for a homestead. By his will he devised five acres of this forty, upon which his dwel- ling-house was situated, to the plaintiff. By the will he also devised the other thirty-five acres, but that devise was held void as creating a perpetuity condemned by statute. The de- ceased had executed to the plaintiff a mortgage on his home- stead, which was a subsisting incumbrance at his death. The thirty-five acres were sold upon foreclosure of the mortgage, and there remained a surplus after satisfying the mortgage. The plaintiff insisted that this surplus should be applied in payment of another claim which had been allowed her against the estate. The probate court decided that she was entitled to this money as against the other heirs; but the circuit court, on appeal from that decision, held that the surplus was not subject to the payment of the debts of the deceased not secured by mortgage or other lien, and that it could not be so ap- plied."

From the judgment of the circuit court the plaintiff ap- pealed.

The cause was submitted on the briefs of *Gillett & Ham- mond* for the appellant and *L. T. Fribert* and *E. C. Lewis* for the respondent.

The argument for the appellant consisted of the written opinion of the county judge filed with the order above mentioned. That part of it which relates to the question here decided, was substantially as follows:

" The statute provides that the owner of a homestead may devise the same, and it shall descend to the legatees named in the will, who shall hold it free from the incumbrance of all judgments and claims against the testator or the estate, except mortgages thereof. If the owner die intestate, leaving no widow, but leaving children or lineal descendants, the homestead shall descend to his heirs in like manner, free from the incumbrance of all judgments and claims against him or his estate. Tay. Stats., 1171, §§ 4, 5. A homestead consists of any quantity of land, not exceeding forty acres, used for agricultural purposes, and the dwelling-house thereon and its appurtenances, to be selected by the owner thereof. Tay. Stats., 1548, § 23; 15 Wis., 635. The land selected as the homestead must have the dwelling-house upon it. Suppose the owner of forty acres, with a dwelling-house thereon, and occupied as a homestead, should sell one acre, including the dwelling-house and appurtenances, would the balance of the forty acres be his homestead? It seems to me that his homestead is gone. It is nowhere held that a bare thirty-nine acres is a homestead. Philip Wood had the right to dispose of his homestead by his last will and testament. He did by his will dispose of five acres, including his dwelling-house, of his homestead forty, and the same has been held and owned by the devisee and her assigns as her and their sole and separate property ever since. He did not die intestate as to his homestead; if he had, it would have descended to his heirs. Sec. 2, ch. 270 of 1864. But the law has nowhere said that if the owner of a homestead dispose of a part of it by will, especially if that part includes the dwelling-house, then the balance of the forty shall descend to his heirs free from the incumbrance of all judgments and claims against

the estate. There is no law by which he could make two homesteads, the one to be held by devise, and the other by descent.

" Again, the homestead may be sold on a mortgage. Tay. Stats., 1700. The statute provides that the proceeds of every sale made on an order of foreclosure shall be applied to the discharge of the debts adjudged by the court to be due, and of the costs awarded; and that the surplus shall be brought into court for the use of the defendant, or of the person who may be entitled thereto. Subject to the order of the court, the money is in the hands of the administrator. I am unable to find any statute which exempts the surplus on a foreclosure sale of the homestead from the debts of the deceased. The general rule is, that all property and money not exempt by statute is liable for debts. It requires a statute to exempt insurance money from the debts of the owner, in case of the burning of the homestead (Tay. Stats., 1551, § 32, subd. 10; id., 1552, § 37); why should it not require a statute to exempt a surplus on a foreclosure sale?"

For the respondent, the following provisions of the statutes were cited: ch. 270, Laws of 1864 (Tay. Stats., 1171, §§ 4, 5); sec. 29, ch. 134, R. S. (Tay. Stats., 1550, § 29); secs. 1 and 3, ch. 94, R. S.; ch. 88, Laws of 1863; ch. 111, Laws of 1873; ch. 366, Laws of 1860, compared with subd. 10, sec. 31, ch. 134, R. S; sec. 1, ch. 137, Laws of 1858, as amended by sec. 1, ch. 79, Laws of 1859 (Tay. Stats., 1550, § 30). These statutes will be liberally construed so as to effect the purpose intended. *Connaughton v. Sands*, 32 Wis., 387; *McCabe v. Mazzuchelli*, 13 id., 478; *Hanson v. Edgar*, 34 id., 653. Counsel further contended that if Philip Wood, while living, had conveyed the five acres of his homestead upon which all the buildings were situated, and had removed entirely from the land, and not built any new house on the remaining thirty-five acres, those thirty-five acres would nevertheless have remained exempt, under the provisions of the acts of 1858 and

1859, now found in Tay. Stats., 1550, § 30.   How then could his devise of the five acres make the other thirty-five acres subject to the payment of his debts?

COLE, J.   The only question to be considered in this case is, whether the surplus arising from the foreclosure sale of the thirty-five acres should be applied to the payment of the claim of the appellant, or should go to the heirs of the deceased.   In the most favorable view of the rights of the appellant, she must stand on the same ground in respect to that fund as any creditor at large of the estate.   Certainly her equities upon this fund are no stronger or higher than such a creditor's would be.

An examination of the statutes in regard to homestead exemption will show that the circuit court was correct in its view of the law.   It is not deemed essential to recite at large the various provisions bearing upon this question, but it will be seen that they expressly declare that the proceeds of the homestead, when it becomes necessary to sell the same to satisfy any mortgage or lien upon it, shall, after the discharge of such mortgage or lien, be distributed according to law, if the deceased dies intestate without a family.   And it is enacted that "in no case whatever shall such proceeds be liable for the debts of the deceased, other than the mortgage debt or lien on such homestead."   (See ch. 88, Laws of 1863; ch. 270, Laws of 1864; ch. 111, Laws of 1873.)   The spirit and policy of all the legislation upon the subject plainly are, to exempt the homestead and its proceeds absolutely from the mere personal debts of the owner.   If the owner disposes of it by will, it descends to the devisee free from the incumbrance of all judgments and claims against the testator; and if he dies intestate, it descends to his widow or heirs.   Ch. 270, *supra*.   Where there is a subsisting lien or mortgage on the homestead, and the other estate of the deceased is insufficient to discharge the same, the power is given to the county court to grant a license

VOL. XLI. — 25

for the sale of the homestead; but in that case the proceeds of the sale, after the payment of the mortgage or other lien, and the expenses of administration, are required to be invested under the direction of the county judge for the benefit of the family; or to be used for the purchase of another homestead, which shall stand in the place of the original homestead. Ch. 111. It seems difficult for any language to make more clear the intention of the legislature to exempt absolutely the homestead and its proceeds from the payment of all debts of the owner except a mortgage or other lien chargeable upon it. Nor do we see any reason for applying a different rule when the homestead is sold on foreclosure of a mortgage upon it, than would obtain when sold by an executor or administrator under a license granted by the county court. In both cases the proceeds are only subject to the discharge of the liens upon the homestead, and cannot be devoted to the payment of the general debts against the estate. This is plainly the humane spirit and intent of the various provisions of the statute.

But it is suggested, because the owner, Philip Wood, devised the five acres which included his dwelling-house, and the appurtenances, that thereby the remaining thirty-five acres ceased to be, or lost the character of, a homestead, fell into the mass of his estate, and became liable for the payment of his debts. We are unable to perceive upon what principle or rule of law any such consequences can be said to follow. Suppose Wood, in his lifetime, had sold and conveyed these five acres, would he have forfeited his right to claim the remainder of the forty for a homestead? Would he not have been permitted to erect another dwelling upon the thirty-five acres, and to occupy it and preserve his home? The exemption, doubtless, applies to the homestead; the homestead ordinarily implies a dwelling-house, residence or abode where the owner resides. But suppose the dwelling-house is destroyed by fire: is the exemption as to the land gone? Cannot the owner still claim and have the benefit of the statute in respect

to the land? Most certainly he can. The character of a homestead which the law gives to the land is not lost, though the dwelling is destroyed. The owner may rebuild again; he may reside for a time in a tent on the land, or even in an emigrant wagon placed upon it, until another house is erected; and the premises would retain continuously the character of a homestead. The statute exempts the homestead, consisting of any quantity of land not exceeding forty acres used for agricultural purposes, and the dwelling-house thereon. Sec. 23, ch. 134, R. S. These and other considerations which might be adduced, have led our minds to the conclusion that the exemption as to the thirty-five acres which constituted a part of the homestead, was not lost in consequence of the devise of the five acres including the dwelling, by the testator. We see no reason for attaching such a result to that act. This court has time and again said that the exemption statute must be liberally construed, so as to carry out the beneficent object of its enactment. That view is elaborately dwelt upon in *Jarvais v. Moe*, 38 Wis., 440, and *Watkins v. Blatschinski*, 40 id., 347, to which reference is made.

It follows from these remarks that the judgment of the circuit court must be affirmed, and the cause remanded for further proceedings.

*By the Court.* — So ordered.