KENT vs. LASLEY and others, imp.

*December 17, 1879 — January 7, 1880.*

| 48 | 257 |
|----|-----|
| 80 | 154 |
| 48 | 257 |
| 112 | ¹264 |

EJECTMENT. *(1) Judgment against tenant not binding on landlord.*
HOMESTEAD. *(2, 3) Presumption as to selection of homestead.*

1. The judgment in ejectment against a tenant of the land *held* not to be binding in a subsequent action of ejectment by the same plaintiff for the same land, against the landlord; and a question determined in the former, not to be *res adjudicata* in the latter.
2. The owner of a legal subdivision of land precisely equal to the statutory measure of a homestead right, whose dwelling-house is situate upon such subdivision, and who has made no different selection, will be held to have selected that subdivision for his homestead, although he also owns adjoining lands from which he might have selected his homestead in part.
3. C., owning 200 acres of land in one body, conveyed the whole to L., his wife not signing the deed. Afterwards, with his wife, he mortgaged the whole 200 acres to K., who purchased the same at the sale on foreclosure of his mortgage. *Held,* that the deed to L. was inoperative to convey the quarter-quarter section on which C.'s dwelling-house was situate at its date; and that title thereto passed to K. by the foreclosure sale.

APPEAL from the Circuit Court for *Winnebago* County. Ejectment, commenced September 24, 1875, for the southwest quarter of the southwest quarter of section 10, town 19, range 15, in said county.

On the 12th of June, 1849, George Cown owned and was in possession of the southwest quarter of said section 10, and also of the fractional southeast quarter of the adjoining section 9, the whole containing about two hundred acres of land lying in one body and in one enclosure, and all cultivated alike by him; and with his wife, Sophia Cown, he resided on the land, and had a right of homestead therein. The house in which he lived was on the quarter-quarter section here in dispute, which was not in any way separated from the rest of the farm; and otherwise than by placing his house there he never made any selection of his homestead out of said farm. On the day above

named, Cown executed a warranty deed (recorded the same day) of the whole two hundred acres to William Lasley, in which deed his wife did not join. In 1852 or 1853, said Cown and wife removed from said lands, and thereafter, until 1860, resided in Shawano county, still farming said lands by his tenants. During the years 1856 to 1860, he resided with his wife in the town of Richmond, in Shawano county, where he voted in each of said years, and where he held the office of chairman of the board of supervisors in 1859, and where he owned in fee simple forty acres of land, which constituted his homestead during all that period. On the 7th of September, 1857, he and his wife mortgaged the 200 acres first above described to one Halstead, to secure payment of his promissory note of the same date for $3,000; and this mortgage was recorded November 17, 1857. On the 17th of February, 1859, Cown and wife mortgaged the same 200 acres to the plaintiff, *William Kent*, to secure payment for such goods as Cown might thereafter purchase of *Kent;* and this mortgage was afterwards duly foreclosed, but neither the defendants herein nor those through whom they claim, excepting Cown and wife, nor Halstead nor any one holding his mortgage, were made defendants to that suit. At the sale on such foreclosure, plaintiff purchased the whole of the two hundred acres, and the referee's deed of the same to him was duly executed April 3, 1865, and duly recorded on the 17th of August following. On the 10th of August, 1867, an action was commenced by this plaintiff against these defendants to declare the conveyance to William Lasley to be a mortgage, and to have been paid; which action resulted in a judgment March 16, 1869, declaring such conveyance to be an absolute deed. On the 10th of January, 1874, plaintiff declared as his selection of the homestead of said Cown in said 200 acres, the quarter-quarter section here in dispute; and this declaration was duly recorded January 12, 1874, and a copy thereof was served on each of the present defendants a year before the commencement of

this action. The defendants, excepting *Amable Cown*, are the wife and children and only heirs-at-law of William Lasley.

Upon these facts the court held, 1. That the deed from Cown to Lasley was invalid as to the homestead, and did not acquire validity in that respect by the subsequent acts of Cown in removing from the land and acquiring a homestead elsewhere, before making the *Kent* mortgage. 2. That Cown did not lose his right to select a homestead in said two hundred acres as against the deed to Lasley, by securing another homestead before such selection. 3. That such right of selection did not pass to Halstead by the mortgage to him, but passed to plaintiff as purchaser on foreclosure of his mortgage. 4. That plaintiff is the owner in fee and entitled to the possession of the tract here in dispute. 5. That no demand other than notice of his selection was necessary to entitle plaintiff to maintain this action.

From a judgment for the plaintiff pursuant to these conclusions, the defendants appealed.

*Moses Hooper*, for appellants, contended, 1. That the clause of the statute restraining alienation of a homestead is a considerable impairment of common-law right, and should be strictly confined to the purpose intended, which is to enable the wife to protect her family in the possession and enjoyment of a homestead after one has been acquired by the husband. *Riehl v. Bingenheimer*, 28 Wis., 84; *Goodell v. Blumer*, 41 id., 436; *Barker v. Dayton*, 28 id., 367; *Wochoska v. Wochoska*, 45 id., 423. 2. That this object would be fully attained by such a construction as validates the deed of one homestead, though lacking the wife's signature, upon the acquisition of another by the husband; and the cases holding this construction are numerous, uniform and respectable. *Stewart v. McKey*, 16 Tex., 56; *Jordan v. Godman*, 19 id., 273; *Allison v. Shilling*, 27 id., 450; *Gee v. Moore*, 14 Cal., 472; *McQuade v. Whaley*, 31 id., 526; *Bowman v. Norton*, 16 id., 213; *Himmelmann v. Schmidt*, 23 id., 117; *Howe v. Adams*, 28 Vt.,

541; *Davis v. Andrews,* 30 id., 678; *Horn v. Tufts,* 39 N. H., 478; *Hewitt v. Templeton,* 48 Ill., 367; *Vasey v. Board of Trustees,* 59 id., 188; *Black v. Curran,* 14 Wall., 463. 3. The deed to *Lasley,* by all the authorities and by the decision of this court in *Kent v. Agard,* 22 Wis., 150, construing the same, was valid except as against the right of selection by Cown. The latter, at the time of the conveyance to *Kent,* had no right of selection, because he was occupying another homestead in Shawano county. He could not hold one homestead, and at the same time have the right of selecting another; and, having no such right himself, he could convey none to *Kent.* 4. Again, if the mortgage to *Kent* carried the right of selection, what shall be said of the prior mortgage to Halstead? Has he not also the right of selection, and may he not locate this floating right on some other forty acres? It would seem that, before making selection and dispossessing the *Lasleys, Kent* ought to subject Halstead's prior right of selection to his will.

*Gabe Bouck,* for respondent, argued, in substance, 1. That the deed to Lasley, without the wife's signature, was not merely voidable, but utterly void, as to the homestead; and the fact that Cown afterward abandoned such homestead, did not change his status as owner, or make valid the void deed. *Williams v. Starr,* 5 Wis., 534; *Phelps v. Rooney,* 9 id., 70; *Hait v. Houle,* 19 id., 472; *Amphlett v. Hibbard,* 29 Mich., 298; *Barnett v. Mendenhall,* 42 Iowa, 296; *Richards v. Greene,* 73 Ill., 54. 2. That as the statute gives the right of selection to the "owner," the claim that Halstead, as first mortgagee, acquired that right, not only conflicts with the doctrine that the legal title rests in the mortgagor until sale on foreclosure, but places the latter and his subsequent grantees or mortgagees completely at the mercy of the first mortgagee, who may select to their injury or even refuse to select at all, and thereby deprive them of the benefit of the statute entirely. 3. That *Kent,* as purchaser at the foreclosure sale,

became the owner within the meaning of the statute, and acquired thereby the right of selection, and of redeeming from the prior mortgage. *Kent v. Agard*, 22 Wis., 150.

RYAN, C. J. This is the same controversy involved in *Kent v. Agard*, 22 Wis., 150. The plaintiff in that case is plaintiff here; but the defendants are different. There the defendants were tenants of the defendants here. The judgment there is, therefore, not binding here. *Smith v. Pretty*, 22 Wis., 655; *Towle v. Smith*, 27 Wis., 268. And the views on which the judgment rested in that case are not *res adjudicata* in this. The soundness of that decision is therefore as far open to question in this case as if the two cases related to different premises, between different parties.

In *Kent v. Agard*, it was held that, where one owns and lives on more than forty acres of agricultural land, or more than a quarter of an acre in a city or village, although his dwelling-house be upon a legal subdivision of land exactly commensurate with the right of *homestead* given by the statute, the limits of his *homestead* remain undetermined until fixed by his selection. Such now appears to the court an unsound, inconvenient and dangerous construction of the statute.

So far as it bears on the question in this case, the statute in relation to homesteads has remained the same from 1848, when it was first adopted, to the present time. It has relation to a homestead not exceeding forty acres in the country, or a quarter of an acre in a city or village, to be selected by the owner; and the rule in *Kent v. Agard* is, that the homestead right does not attach to any particular land until the selection be made. The right is, however, limited to the land on which the dwelling-house and its appurtenances are situate; and when the dwelling-house, which is the controlling quality of the right, is situate upon a legal subdivision of land precisely equal to the statutory measure of the right, and when the

owner of it, owning also adjoining land, has made no different selection, he ought to be held to a tacit selection of the legal subdivision on which his dwelling-house stands. Practically this has been the construction of the statute in all or almost all cases except *Kent v. Agard;* and this now appears to the court to be not only an admissible construction of the statute, but better in accord with its spirit and purpose, most convenient, and essential to the certainty of the right of homestead; for, under the construction of *Kent v. Agard,* when one owns in one body more than the legal extent of the right of homestead, and fails to make a selection, he might, in many contingencies, be held to have waived and lost the right itself.

Doubtless, when the owner's estate exceeds the statutory limit, there is a right of selection given by the statute, beyond the limits of the legal subdivision on which the dwelling-house stands. But this right must be held waived by failure to exercise it, except, perhaps, in the particular case expressly provided for in the statute. It might not, perhaps, be a forced construction of the statute to limit the right of selection to that particular case. But this court has uniformly held that the statute should receive a liberal construction in favor of the right of homestead; and it is safer and better to hold the right of selection to be general.

The one case for which the statute expressly provides, is the levy of an execution upon a body of land greater than the right, within which the owner has not selected his homestead. The effect of that provision is not involved in this case, and need not be considered.

The terms of the statute, " to be selected by the owner," apply equally to all homesteads, whether the owner's seizin of land in one body, including the dwelling-house, be greater or less than the statutory limit of the right, or precisely equal to it. And if, by the terms of the statute, selection be necessary to determine the precise limits of the homestead in any case, it is equally necessary in all cases. Though the selection, if

selection be essential, cannot exceed the statutory limit, it may be less. *People v. Plumsted*, 2 Mich., 465. And if selection be essential, courts cannot recognize the limits of any homestead without it.

This court has, in a great number of cases, recognized the extent of the right, without selection, where the dwelling-house stood upon a legal subdivision of land not exceeding the statutory limit. *Williams v. Starr*, 5 Wis., 534; *Phelps v. Rooney*, 9 Wis., 70; *Dreutzer v. Bell*, 11 Wis., 114; *Green v. Lyndes*, 12 Wis., 404; *Platto v. Cady*, id., 461; *Bull v. Conroe*, 13 Wis., 233; *McCabe v. Mazzuchelli*, id., 478; *Simmons v. Johnson*, 14 Wis., 523; *Bunker v. Locke*, 15 Wis., 635; *Spencer v. Fredendall*, id., 666; *Re Phelan*, 16 Wis., 76; *Casselman v. Packard*, id., 114; *Trustees v. Schell*, 17 Wis., 308; *Jones v. Dow*, 18 Wis., 241; *Borrman v. Schober*, id., 437; *Bennett v. Child*, 19 Wis., 362; *Myers v. Ford*, 22 Wis., 139; *Murphy v. Crouch*, 24 Wis., 365; *Howe v. McGivern*, 25 Wis., 525; *Campbell v. Babcock*, 27 Wis., 512; *Anderson v. Coburn*, id., 558; *Riehl v. Bingenheimer*, 28 Wis., 84; *Hibben v. Soyer*, 33 Wis., 319; *Hanson v. Edgar*, 34 Wis., 653; *Bridge v. Ward*, 35 Wis., 687; *Weisbrod v. Daenicke*, 36 Wis., 73; *Krueger v. Pierce*, 37 Wis., 269; *Massing v. Ames*, id., 645; *Jarvais v. Moe*, 38 Wis., 440; *Watkins v. Blatschinski*, 40 Wis., 347; *Johnson v. Harrison*, 41 Wis., 381; *Goodell v. Blumer*, id., 436; *Wochoska v. Wochoska*, 45 Wis., 423; *Godfrey v. Thornton*, 46 Wis., 677. So where the sheriff levied, and the owner made no selection as provided in the statute. *Herrick v. Graves*, 16 Wis., 157; *Smith v. Omans*, 17 Wis., 395. So, even, where the owner owned adjoining land in excess of the statutory limit, and had made no selection. *Hait v. Houle*, 19 Wis., 472; *Pike v. Miles*, 23 Wis., 164; *Lloyd v. Frank*, 30 Wis., 306 — cases expressly sanctioning the rule now adopted.

The judgment of the court in all these cases is inconsistent with the rule in *Kent v. Agard*. No other case is found to

support the latter, and *dicta* sanctioning it in very few cases. *Hoyt v. Howe*, 3 Wis., 752; *White v. Polleys*, 20 Wis., 503.

It is quite true that the statute applies the homestead right to the land on which the dwelling-house *and its appurtenances* are situated; and the late Mr. Justice PAINE, in *Kent v. Agard*, illustrates his position by instancing the case of the dwelling-house on one 40-acre lot, and the barns, outhouses, gardens, etc., on another; and he remarks that it was the design of the statute, in such a case, to allow the owner to select any 40 acres, in reasonable shape, that would include the dwelling-house. Of this there can be no doubt; but it was not the intention of the statute to force the owner to make such selection. The right rests primarily on the dwelling-house, not on its appurtenances; and if the owner fail to make the statutory selection, so as to include the appurtenances of the dwelling-house, he must be held to limit his homestead to the legal subdivision, corresponding with the statutory limit, on which his dwelling-house stands. It is his business to make the selection, when he considers it necessary to his right; and it is not the business of courts to make it for him, or to force him to make it, or to aid his defect of right arising by his own laches.

It is held in *Kent v. Agard* that the husband's conveyance, without the signature of the wife, is invalid to the extent of the unselected homestead; that is to say, is valid as to an uncertain part of the grant, and invalid as to another uncertain part; and that the husband's conveyance, with the wife's signature, operative to convey the unselected homestead, vests in the grantee the right of selection, after the right itself of the grantor has ceased. Such a rule appears to work a solecism in the law of conveyancing, making valid grants without certainty of the thing granted, and to be productive of great and needless confusion. The rule adopted on the present appeal appears to avoid all this, and to rest more securely on well-settled principles. The result to the parties here is precisely

the same as if the court had followed the rule of ' *Kent v. Agard;* and the court, the profession and the public gain a certain and uniform rule, already sanctioned by so great a number of adjudications. The truth is that *Kent v. Agard* is an exceptional case, not resting on sound principle, and ought to be overruled, as it is, for the sake of uniformity of decision.

The dwelling-house of Cown, the common grantor of the parties, stood on the 40-acre lot for which this action is brought; and, in the absence of other selection, constituted his homestead when his conveyances were executed. The respondent claims under a conveyance executed by Cown and his wife; the appellants under a conveyance executed by Cown only, without the signature of his wife. The conveyance under which the appellants claim, without the wife's signature, was inoperative to convey the homestead; and the respondent's title to the lot on which Cown's dwelling-house stood must therefore prevail.

*By the Court.* — The judgment of the court below is affirmed.