BLACKBURN, Respondent, vs. LAKE SHORE TRAFFIC COMPANY, Appellant.

*April 27 — May 15, 1895.*

*Lien of judgment: Trust in favor of creditors: Homestead: Abandonment.*

1. The trust which arises, under sec. 2078, R. S., where one person pays for land and the title is taken in the name of another, is a trust in favor of the creditors of the former, and he acquires no title to which a judgment lien can attach.

2. Plaintiff left the premises in question, which were then his homestead, for the sole purpose, as he testified, of securing the rent therefrom and with the intention to return in six months. He built another house suited for his use, and which he in fact used, on a lot for which he himself paid, and witnessed and had recorded a contract for the conveyance of said lot to his daughter, in which contract it was described as his homestead. He remained away from the premises in question, although they became vacant and so remained for months, for more than six years after leaving them; but he testified that his intention had always been to go back. *Held,* that he had abandoned the premises as his homestead, and that the lien of a judgment against him had attached thereto. His *ex post facto* professions, after circumstances had rendered a return advantageous, were insufficient to rebut the presumption that his removal was *animo manendi.*

APPEAL from a judgment of the circuit court for Ashland county: JOHN K. PARISH, Circuit Judge. *Reversed.*

Action to remove a cloud on title. The complaint alleged ownership in the plaintiff since November 2, 1886, of lot 8, in block 6, original plat of the village of Hurley, Ashland county, and that it is and has been since said 2d of November the plaintiff's homestead; that the defendant obtained a judgment against the plaintiff, November 10, 1885, for $20,036.45 and costs, and docketed a transcript thereof in Ashland county, November 12, 1885; that thereafter execution was issued on said judgment, and the said lot sold to the defendant by the sheriff upon such execution; and that

the defendant sets up a claim to said lot under such sale. The answer admits the legal title of the plaintiff in the lot, but denies that the same is or ever has been the plaintiff's homestead, and justifies its claim thereto under its judgment and execution sale.

It appeared upon the trial that in November, 1884, the property in question was a vacant lot, and that on the 3d of said month it was deeded by the Northern Chief Iron Company to R. D. Blackburn, an eighteen year old son of the plaintiff, for the expressed consideration of $75. The plaintiff testified that he bought the lot for his son; that his son paid the purchase money, "or, probably, I paid it for him; he was paying $10 on the lot as he could spare it." In April and May, 1886, the plaintiff built a fourteen-room double house on the lot, with lumber bought of Hoxie & Mellor, and on the 14th of April, 1886, R. D. Blackburn conveyed the lot to said Hoxie & Mellor as security for said lumber. June 1, 1886, the plaintiff moved into the house with his family, and rented some rooms to other parties, and continued to live in the house until about May 1, 1887. On the 2d day of November, 1886, Hoxie & Mellor conveyed the property to the plaintiff, and on the 14th day of December, 1887, the plaintiff and his wife conveyed the same to their daughter Anna B. Blackburn for the expressed consideration of $1,250. The plaintiff testified that the reason the title was put in his daughter's name was that he had to borrow some money, and the party lending the money preferred to have the title in some one else's name. From the 1st of May, 1887, when plaintiff and his family moved out of the house, until the trial of this action in February, 1893, the house has been either occupied by tenants or has stood vacant. Part of the time it was rented as a boarding house, part of the time as an hotel, part of the time as a dwelling house, and after October 2, 1892, it stood vacant. The plaintiff testified that when he made arrangements for the

lot and to build a house on it he intended to make it his homestead; that his object in moving out of it was to get the good rent which he was offered, because he needed the rent money, and that his intention then was to go back to it at the end of six months; that his intention since then is to go back to it, and that it was never his intention to abandon it.

When the plaintiff and his family moved away from the premises, May 1, 1887, they moved into a small house or part of a house on another lot in Hurley, the title to which was in the Washburn Lumber Company. The plaintiff appears to have previously made some oral arrangement to purchase this lot. He testifies that his wife built the first part of the house or kitchen into which they moved, but that she had no means or property of her own, and the boys gave her money from time to time, and he himself did. An addition was immediately built on this fragmentary house. The money was furnished partly, certainly, by the plaintiff, and probably entirely so. In this house the plaintiff and his family lived continuously up to the time of the trial of this action. January 11, 1888, G. W. Washburn, president of the Washburn Lumber Company, made a written contract with Anna B. Blackburn to convey the last-mentioned lot to her, upon her agreement to pay therefor $1,967.93, " according to the conditions of four certain promissory notes executed by *James Blackburn*." After the description of the property in this contract, the following clause appears: " This description is intended to describe and this contract to apply to that portion of land now occupied and known as the homestead of *James Blackburn*." To this contract *James Blackburn* was a witness. This contract was recorded in the register's office, December 2, 1889, and it appears by the index record of the office that it was delivered to *James Blackburn* after being recorded, and on the 27th of December, 1889. On the 2d day of December, 1889, the Washburn Lumber Company conveyed the premises to Georgiana

M. Blackburn, the plaintiff's wife, for the expressed consideration of $2,400. After the description in this deed appears the following sentence: "This description is intended to describe and cover the tract of land occupied by *James Blackburn* as a residence for himself and family."

The circuit court found that the first-mentioned lot and dwelling house was and still is the homestead of the plaintiff, and adjudged that the defendant be barred of all right or claim thereto. From this judgment the defendant appealed.

For the appellant there was a brief by *Fish & Cary*, of counsel, and oral argument by *John T. Fish.*

For the respondent there was a brief by *Foster & Bushnell*, and oral argument by *T. H. Bushnell.*

Winslow, J. It is contended by the defendant that when the minor son of the plaintiff, R. D. Blackburn, acquired title to lot 8, block 6, in November, 1884, he held it as trustee for his father, the plaintiff, who paid the consideration therefor; and consequently that the defendant's judgment immediately became a lien thereon, under R. S. sec. 2992. This contention cannot be maintained, because the trust in such case is a trust in favor of the creditors of the person paying the consideration, and not in favor of such person himself. R. S. sec. 2078. The person paying the consideration acquires no title to which a judgment lien can attach. This has been expressly decided by this court very recently. *Miner v. Lane*, 87 Wis. 348.

When the plaintiff actually acquired title to the property, in November, 1886, he was residing upon it with his family, presumptively with the intention of making it his homestead, and it would seem quite clear that the lien of the judgment did not attach during the time of his residence there under such circumstances. The question, therefore, upon which the case depends is whether he abandoned his homestead either when he moved away from it in May, 1887,

or subsequently. The homestead exemption is not impaired, by "temporary removal with the intention to reoccupy the same as a homestead." R. S. sec. 2983. It has been held that the words "temporary removal," as here used, mean "a removal for a fixed and temporary purpose or for a temporary reason;" also, that, "in order to prevent an abandonment by such removal, it must be made with the certain and abiding intention of returning to the premises and residing thereon as a homestead." *Moore v. Smead*, 89 Wis. 558. "A vague intention to return perhaps at some future day and reside there again, will not preserve the homestead." *Jarvais v. Moe*, 38 Wis. 440.

The plaintiff testifies now that he intended to return at the end of six months. This intention he evidently abandoned, because he did not return then, but left it either rented or vacant for nearly six years. He also testifies now that his intention has always been to go back to that homestead. In this connection the remarks of RYAN, C. J., in *Jarvais v. Moe, supra*, are very pertinent: "When he made the removal, the presumption was that he did so *animo manendi*. 1 Kent, Comm. 76. The presumption might be rebutted by circumstances and conditions surrounding the removal, or declarations accompanying it, manifesting a temporary purpose and an intention to return; but not satisfactorily by *ex post facto* professions, after intervening occurrences had made return advantageous. The intention which is sufficient to rebut the presumption must be positive and certain, not conditional or indefinite." Examining the testimony in this case, we see no circumstances or declarations which accompanied or immediately followed the plaintiff's removal which tend to rebut the presumption that such removal was made *animo manendi*. On the contrary, all such circumstances tend to confirm the presumption. He leaves the place with the definite purpose (as he testifies) to return in six months. On the contrary, he remains away nearly six

years. He builds another house, suited for his own use, and which he in fact uses, on property for which he himself pays, so far as it is paid for at all. He witnesses and records a contract for this second lot, in which it is described as his "homestead." He now declares that his only purpose in removing from the property in question was to secure the rent therefrom, but when it becomes vacant and so remains for months he does not return to it. In fact, the only evidence tending to rebut the presumption that his removal was made *animo manendi* is his *ex post facto* professions made at the time of the trial, when circumstances had rendered his return advantageous. We do not regard these professions as in any respect sufficient to rebut the presumption, strengthened as it is by contemporary circumstances and conditions. The evidence shows very clearly to our minds that when the plaintiff removed from the premises in question he had no positive or certain intention to return, and that he consequently abandoned it as a homestead.

*By the Court.*— Judgment reversed, and action remanded with directions to render judgment for the defendant.