### PETERSON v. WASSERMAN et al.

(Circuit Court of Appeals, Seventh Circuit.   October 2, 1917.)

### No. 2441.

HOMESTEAD ⬦163—ABANDONMENT—WHAT CONSTITUTES.

St. Wis. 1915, § 2983, provides that a homestead to the value of $5,000 shall be exempt from liability for the debts of the owner, that such exemption shall not be impaired by temporary removal with intention to reoccupy the same as a homestead, nor by the sale thereof, but shall extend to the proceeds derived from such sale to an amount not exceeding $5,000, while held with intent to procure another homestead therewith, for a period not exceeding two years.   A bankrupt, who owned a homestead in one Wisconsin city, sold his business therein and removed to another town to engage in manufacturing.   Less than a year after his removal to the second town, his factory burned, and he lost his investment, having no insurance.   Thereupon he removed to a third town, where he engaged in business and voted.   After being in the third town for some time, he disposed of the premises which he had occupied as a homestead in the first city.   At the time of his removal he intended to make his home in the town where he carried on his manufacturing, if his business was successful, and had no intention, if successful, to return to the first city, wherein was located his former homestead.   *Held*, that the bankrupt's mere vague intention to return, perhaps, at some future time, and reoccupy his homestead, did not preserve his rights therein, and his removal from the town wherein he carried on his manufacturing to a third town showed an intent to abandon it, so that proceeds from the sale of such homestead were subject to his debts.

Appeal from the District Court of the United States for the Western District of Wisconsin.

Suit by Charles B. Peterson, trustee in bankruptcy of Samuel H. Wasserman, bankrupt, against Bertha Wasserman and others.   From a judgment for defendants, plaintiff appeals.   Reversed, with directions.

The action was brought by the trustee in bankruptcy to recover the proceeds of the sale of certain real estate in Sheboygan, Wis., which at one time constituted the bankrupt's homestead.   The District Court found as facts that in 1911 and theretofore the bankrupt with his family resided on the premises, title to which was in the bankrupt, subject to a mortgage of $1,400; that in January, 1911, bankrupt sold his grocery business at Sheboygan and went to Marinette, Wis., to engage in the manufacture of brooms, and that in the middle of that year he moved his family there; that early in 1912 his broom factory burned, and, having no insurance, he lost his investment, and shortly thereafter moved his family to Rhinelander, Wis., where he was in the junk business for about a year, and that in September, 1913, he bought a bankrupt stock of merchandise and started a store at Rhinelander, which he conducted until 1914, when the petition in bankruptcy was filed; that at Rhinelander he voted at the primary and general election for 1914; that after being at Rhinelander for some time he concluded to sell the Sheboygan property and invest the proceeds in a homestead at Rhinelander, and accordingly the property was put on the market, resulting in its sale December 3, 1914, for $800, cash and some lots worth about $200, all of which, less certain expenses of sale, came into the possession of the bankrupt's wife; that on moving to Marinette the bankrupt intended to make that place his home, if his business was successful, and he had no present absolute intention of returning to Sheboygan, any such intention being conditioned on his want of success in business elsewhere; that at Marinette his business prospered for a time, when the loss of his broom business caused the purpose to fail for which

he had come to Marinette; that on going to Rhinelander he at first thought that some time later he would return with his family to Sheboygan, but there was no evidence of any contemporaneous statement or declaration by the bankrupt at the time of his going either to Marinette or to Rhinelander respecting his intention to reoccupy the Sheboygan property; that, in the words of the finding of the court, "the defendants Samuel H. Wasserman and Bertha Wasserman never acquired any other homestead, and they kept the property in Sheboygan throughout the period of their changes of residence until they formed the intention to sell the Sheboygan property for the purpose of purchasing a home in the city of Rhinelander; that the fact that the defendant Samuel H. Wasserman retained the title to the Sheboygan property throughout said period is evidence of his intention to keep it as his homestead and not to surrender or abandon his homestead rights therein." The court found that the bankrupt had not abandoned his right of homestead in the property, and that the proceeds of the sale were exempt, and free of the claims of his creditors, and dismissed the complaint.

The Wisconsin statute providing for the homestead exemption is as follows (section 2983): "A homestead to be selected by the owner thereof consisting, when not included in any city or village, of any quantity of land, not exceeding forty acres, used for agricultural purposes; and when included in any city or village of any quantity of land not exceeding one-fourth of an acre and the dwelling house thereon and its appurtenances owned and occupied by any resident of this state shall be exempt from seizure or sale on execution, from the lien of every judgment and from liability in any form for the debts of such owner to the amount in value of five thousand dollars, except laborers', mechanics' and purchase money liens and mortgages lawfully executed, and taxes lawfully assessed and except as otherwise provided in these statutes, and such exemption shall not be impaired by temporary removal with the intention to reoccupy the same as a homestead nor by the sale thereof, but shall extend to the proceeds derived from such sale to an amount not exceeding five thousand dollars, while held, with the intention to procure another homestead therewith, for a period not exceeding two years. Such exemption shall extend to land not exceeding altogether the amount and value aforesaid, owned by a husband and wife jointly or in common and to the interest therein of a tenant in common or two or more tenants in common, having a homestead thereon, with the consent, expressed or implied, of the cotenants, and to any estate less than a fee held by any person by lease, contract or otherwise."

Emerson Ela, of Madison, Wis., for appellees.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

ALSCHULER, Circuit Judge (after stating the facts as above). That the property constituted Wasserman's homestead while he lived at Sheboygan is undisputed. If at the time of the sale the homestead right still inhered, it is clear the sale itself did not operate to defeat that right, as the statute permits sale to be made of the homestead, and provides that the proceeds shall be exempt for two years, if intended to be invested in another homestead, and it is not questioned that, as found, it was intended to invest in another homestead. The question here is whether Wasserman's conduct, as indicated, amounted to an abandonment of the homestead, so that at the time of the sale he had no homestead right in the property.

The homestead exemption is of statutory origin, to be measured by the statute which created it, as construed by the courts of the state. The Wisconsin statute provides that "such exemption shall not be impaired by temporary removal with intention to reoccupy the same as a homestead." Though stated in Binzel v. Grogan, 67 Wis. 147, 29 N.

W. 895, that in the interest of the homestead the statute should be given a liberal, and not always a literal, construction, it is hardly to be gathered from the quoted words that on removal from the homestead the "intention to reoccupy" it is deducible from a mere lack of present intention to acquire another homestead. The decisions of the Wisconsin Supreme Court do not leave room for doubt as to the construction we must adopt. In Jarvais et al. v. Moe et al., 38 Wis. 440, in an opinion by Ryan, C. J., the cases were reviewed, and it was held that:

"To preserve his home upon removal from it, the temporary purpose, the animus revertendi, must be certain and definite. A vague intention to return perhaps at some future time and reside there again will not preserve his home."

In Moore v. Smead, 89 Wis. 558, 62 N. W. 426, the court, speaking by Cassoday, J., said:

"The precise question for determination, therefore, is whether Baker's removal from his homestead in the summer of 1881 was 'temporary' merely, 'with the intention' of reoccupying the same as a homestead. Certainly he never returned after he moved from the place in the summer of 1881. 'Temporary' means, as defined by the dictionaries, 'lasting for a time only; existing or continuing for a limited time;' 'not of long duration; not permanent; transitory;' 'continuing but a short time.' A 'homestead' means a place of residence, and implies occupancy and possession as such. The words 'temporary removal' manifestly mean a removal for a fixed and temporary purpose, or for a temporary reason. Phillips v. Root, 68 Wis. 128 [31 N. W. 712]; Jarvais v. Moe, 38 Wis. 440; Herrick v. Graves, 16 Wis. 157. In order to prevent an abandonment by such removal, it must be made with the certain and abiding intention of returning to the premises and residing thereon as a homestead."

And in Blackburn v. Lake Shore Traffic Co., 90 Wis. 362, 63 N. W. 289, Winslow, J., delivering the opinion of the court, cited these cases with approval, concluding that:

"The evidence shows very clearly to our minds that when the plaintiff removed from the premises in question he had no positive or certain intention to return, and that he consequently abandoned it as a homestead."

In the instant case, from the findings of fact as well as the evidence on which they are based, we cannot conclude that, when Wasserman left the Sheboygan home, it was with any fixed and definite present intent to reoccupy it. The very most that can be said is that he was of the mind to return to the home if he did not succeed in business elsewhere. But in such a purpose there is nothing definite or fixed or positive, but only a contingency in the event of which he might reoccupy. He moved with his family in 1911 to Marinette, where they resided, and where he invested his money in the broom business. If, as he stated, and was found by the court, the fixedness of his residence elsewhere depended upon his business success there, such condition did in fact come into being, for it was testified and found that his business at Marinette proved successful, though afterwards lost to him through destruction by fire. This very success thus eliminated even the one contingency on the happening of which he intended to reoccupy the homestead, and thereby completed the act of its abandonment, if not already complete through his leaving it without the fixed and definite intent to reoccupy. The abandonment once completed through his

residence and his success in business at Marinette, the homestead right could not be revived through his subsequent business reverses. If thereafter it was his desire again to make the Sheboygan property his homestead, he could only do so by actually reoccupying it as such. His subsequent residence and business at Rhinelander, his voting there, and his failure to again return to Sheboygan to reside, all tend strongly to confirm the already strong inference that his removal from the homestead was not temporary, nor with definite intention to reoccupy it.

From the facts as found by the District Court, as well as from the evidence adduced, under the law of Wisconsin we are forced to the conclusion that Wasserman abandoned the homestead when he removed his family from it, and that the trustee is therefore entitled to have the net proceeds of the sale of the property for the benefit of Wasserman's creditors.

The judgment of the District Court is reversed, with direction to enter a judgment in accordance with the foregoing views.